WILBUR H. HANKS *vs.* BOSTON AND ALBANY RAILROAD
COMPANY.

JOSHUA E. BEEMAN, administrator, *vs.* SAME.

SAME *vs.* SAME.

Worcester.    October 2, 3, 1888. — October 19, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Private Railroad Crossing — Invitation to Public — View by Jury —*
*Due Care by Person killed.*

At the trial of an action against a railroad corporation for causing the death of a person at a crossing, there was evidence that the corporation had constructed and planked the crossing; that it connected an open freight-yard with an unenclosed lumber-yard, from which a private way used by many persons led to a highway; that there were wheel tracks leading from a town way into and across the freight-yard to the crossing; that teams of all kinds passed over it

daily to and from the freight-yard and lumber-yard; but there was no evidence of the continuous passage of a team over it in either direction between the town way and the highway. The jury took a view of the locality. *Held*, that there was evidence to go to the jury that the railroad corporation had held out inducements to the public to use the crossing.

On the issue whether the person killed was in the exercise of due care, there was evidence that he approached the crossing, driving his horse at a trot; that the outlook along the railroad in one direction was. cut off by a building and by freight cars standing near the crossing, except at a single point about twenty feet therefrom; that no warning signals were given by a train approaching from that direction, and that, as he got upon the crossing and saw the train, he at first checked his horse and then started him again, when he was struck and killed. *Held*, that there was evidence that he was in the exercise of due care.

THREE ACTIONS OF TORT.  The first action was for personal injuries received by the plaintiff, while driving with Frank W. Moses, by being struck by a locomotive engine at a crossing of the defendant's railroad.  The second and third actions were brought by the administrator of the estate of Moses, to recover for his death and for the damage to his horse and wagon.  The cases were tried together in the Superior Court, before *Dewey*, J., who refused to rule that there was no evidence to warrant a finding that Moses was induced or invited by the defendant to go upon the crossing, or that he was not in the exercise of due care, and, after verdicts for the plaintiff in each case, allowed a bill of exceptions, the material part of which appears in the opinion.

*F. P. Goulding*, for the defendant.

*W. S. B. Hopkins*, (*J. E. Beeman* with him,) for the plaintiffs.

DEVENS, J.   It will be conceded, not only that the defendant corporation might so conduct itself in regard to a crossing over its railroad as to give a tacit license or assent to its use as a crossing by the public, but that the circumstances under which such use was permitted and enjoyed might also amount to an inducement or invitation to persons having occasion to pass thereon to treat the same as a highway, and to use it for any lawful purpose.  *Sweeny* v. *Old Colony & Newport Railroad*, 10 Allen, 368.  *Murphy* v. *Boston & Albany Railroad*, 133 Mass. 121. *O'Connor* v. *Boston & Lowell Railroad*, 135 Mass. 352, 358.

If Moses attempted to cross merely by license or under a permission of the defendant, these actions cannot be maintained. The first question is, therefore, whether, upon the evidence in

the cases, the defendant had so held out the crossing as one to be used and enjoyed by the public, that Moses, who was the driver of a job wagon, may be said to have attempted by its inducement or invitation to use it.

There was evidence tending to prove the following facts. The crossing, which was carefully planked, had been constructed by the defendant across its railroad, which at this point ran east and west. It was eighty feet in length and twelve in width, extending over six railroad tracks, and led directly from the freight-yard of the defendant, on the south, into the grounds of Whitney and Company, on the north. One Fisher, who had previously owned the land occupied by Whitney and Company, had possessed a right of way over the defendant's railroad, but he had deceased at the time the way was thus prepared. It did not appear that at this time, or at that of the accident, any person had any right of way over the railroad, except such, if any, as might be derived from the license or the invitation of the defendant. Main Street ran north and south, and crossed the railroad at a point west of the crossing and of the premises of the defendant and of Whitney and Company. Wheel tracks led from Brigham Street, a town way leading to the east from Main Street and lying to the south of the defendant's premises and the crossing, which passed along the southerly side of a milk-shed, grist-mill, and freight-house of the defendant, to the south end of the crossing, while other wheel tracks led to the same place from a point where Brigham Street intersected Cottage Street, another town way leading off from Brigham Street towards the south, at a point nearly opposite the crossing. These wheel tracks extended through the open area which surrounded these buildings of the defendant, which area was used as a mill and freight yard. The premises of Whitney and Company lay on the northerly side of the railroad, easterly and westerly of the crossing; they were unenclosed, but contained a box factory, planing-mill, and lumberyard. From them a way led, over the premises of one Smith, westerly to Main Street, between a straw shop and bakery belonging to Smith. This was a private way appurtenant to the premises occupied by Whitney and Company, but used in common by them, by Smith, by the owners or occupants of the

straw shop and bakery, and by others. This private way was unenclosed, and from one to two rods in width as travelled, and there were other buildings besides those described on the Smith estate.

There was further evidence, that teams, express wagons, and sometimes lighter carriages, to the number of from ten to twenty-five a day, passed over the crossing, conveying lumber and other articles to and from the premises of Whitney and Company, flour to the bakery, and coal, pasteboard, etc. to the straw shop, and bringing articles therefrom, also depositing rubbish behind the bakery and in the swamp beyond the premises of Whitney and Company, and drawing wood from the swamp in the winter. There was also evidence that people from out of town came that way by the crossing to the premises of Whitney and Company, " that people in town would go both ways," and " that any one who wanted to cross could do so when the road was clear"; and that, in the language of one witness, " express wagons, market wagons, coal teams, truck teams, wood and lumber teams, all kinds of business teams, and occasionally private teams," went across there. It appeared that the crossing was sometimes obstructed by cars kept on the track nearest the premises of Whitney and Company, which were moved, however, when they requested.

Upon this evidence, a case was presented, to be decided by the jury, whether an inducement or invitation had been held out to the public to use this crossing for any lawful purpose, of which Moses was entitled to avail himself. In deciding this, it was a circumstance to be considered, indeed, that the crossing could only be reached through the premises of Whitney and Company or the defendant, but in connection with the method in which the latter had permitted its freight-yard and the area around its buildings to be used, and the wheel tracks it had permitted to be there established. Nor was it decisive against the claim of the plaintiffs, that there was no evidence that, previous to the injury, any team had passed through the premises of Whitney and Company and Smith from Brigham Street to Main Street, or in the opposite direction, in a continuous journey.

In determining whether there was an inducement to travellers to avail themselves of a crossing, it has no doubt been held im-

portant in some cases that such crossing directly connected two parts of the same street. *Sweeny* v. *Old Colony & Newport Railroad*, 10 Allen, 368. *O'Connor* v. *Boston & Lowell Railroad*, 135 Mass. 352, 358. But as an invitation to enter premises may be established even when the traveller is not invited to go beyond them, so there may be an invitation to cross them to the premises of others, but not necessarily to any public way beyond.

In holding that the evidence was sufficient to justify the submission of the case to the jury on this point, it is to be observed that the jury may have been materially aided by a view taken by them of the locality. *Tully* v. *Fitchburg Railroad*, 134 Mass. 499.

The defendant further contends, that there was no evidence of due care on the part of Moses as he approached the track. While he was driving at a trot, there was nothing to show that this was an improper or dangerous pace. There is no evidence that he looked for a coming train, but as he approached the crossing his view was obstructed by cars which were standing on the rails of the first track, near the box factory and easterly of the crossing. It appears by one witness that there is a point some twenty feet from the crossing and upon the roadway where a view could have been obtained to the east between the box factory and the cars as they stood on the track. But it is impossible to say that because Moses is not shown to have availed himself of this opportunity for a casual glance, he was not in the exercise of due care. *Williams* v. *Grealy*, 112 Mass. 79. Nor was it affirmatively shown that Moses listened for a coming train, but it was in evidence that witnesses, one of whom stood close by the office door near which he passed, heard no sound of an approaching train until the alarm whistle was sounded, when the engineer discovered Moses on the crossing. The engineer, indeed, testified that he rang the bell as he approached the crossing, but as it was not heard by others, the jury may have believed there was some mistake about this. To some extent Moses had a right to expect that the usual signals of warning of an approaching train would be given, and to rely on this. *Chaffee* v. *Boston & Lowell Railroad*, 104 Mass. 108.

Taking all the circumstances into consideration, the pace at

which Moses was travelling, the obstructions which intervened between himself and his sight to the east as he entered upon the crossing, the fact that the sound of the approaching train was not heard by others, it was for the jury to say whether he had exercised reasonable precaution in entering upon the crossing. That the hesitating conduct of Moses after he saw the train, in checking his horse and then starting him again, considering his alarm and consequent confusion, was otherwise than that of a prudent man, was not seriously contended.

*Exceptions overruled.*