William T. O'Meara *vs.* Boston and Maine Railroad.

Essex.    October 5, 1931. — December 2, 1931.

Present: Rugg, C.J., Crosby, Carroll, Sanderson, & Field, JJ.

*Negligence,* Violation of statute, Grade crossing.

At the trial of an action against a railroad corporation under G. L. c. 160, §§ 138, 232, for personal injuries and property damage resulting from a collision between an automobile operated by the plaintiff and a freight car of the defendant at a grade crossing of the railroad with a public way, there was evidence that, in the dark of an early morning, the plaintiff approached the crossing, with which he was familiar, decreasing his rate of speed so that, when fifty feet from the crossing, he was going at the rate of fifteen miles per hour, when forty feet from it, at ten and twelve miles per hour, when six or eight feet from it, at six or eight miles per hour; that when two or three feet from it, he for the first time saw a freight car on the track, and that the next thing he knew the collision occurred; that the freight car was forty-eight feet long and thirteen or fourteen feet high; that, when twenty-five feet from the crossing, he could have stopped within ten feet; that he could see only about twenty-five feet down the track in the direction from which the train was coming; that the headlights on the automobile were strong, illuminating objects one hundred twenty-five feet ahead and "to the side some"; that the freight car was backed a distance of about thirty feet from the plaintiff's right and stopped at the curb on the left side of the street; and that as he approached the crossing he looked and listened for the train but did not see or hear it and did not hear any signals. No signal was given by the engineer. *Held,* that, as a matter of law, on the plaintiff's own testimony, he violated G. L. c. 90, § 15, in that he failed to proceed cautiously as he approached the crossing; and judgment was ordered entered for the defendant.

Tort, with a declaration described in the opinion. Writ dated October 4, 1927.

In the Superior Court, the action was tried before *Collins,* J. Material evidence and rulings by the trial judge are stated in the opinion. There was a verdict for the plaintiff in the sum of $2,300. The defendant alleged exceptions.

*F. P. Garland,* (*J. DeCourcy* with him,) for the defendant.
*P. H. Tenney,* for the plaintiff.

CROSBY, J.   This is an action to recover for personal injuries and for damage to an automobile, resulting from a collision between an automobile operated by the plaintiff and a freight car of the defendant, in Peabody, where Endicott Street, a public way, crosses the defendant's tracks at grade.

The accident occurred at ten minutes before four o'clock on the morning of May 1, 1927, and it was agreed that the sun rose at 4:40 A.M. standard time on that day.   The plaintiff's substituted declaration contained four counts; the first and second at common law, and the third and fourth under G. L. c. 160, §§ 138 and 232.   Counts 1 and 3 are to recover for personal injuries, and counts 2 and 4 are for damage to the automobile.

At the close of the evidence the defendant presented a written motion for a directed verdict in its favor upon each of the four counts.   The trial judge granted the motion so far as it related to counts 1 and 2, and denied it as to counts 3 and 4.   The defendant excepted to this refusal and to the refusal of the judge to give certain requests for rulings.   The case was thereafter submitted to the jury upon the third and fourth counts, and the following question also was submitted to them: "Was the bell on the locomotive rung as required by the statute?"   This question was answered in the negative, and verdicts were returned for the plaintiff on counts 3 and 4.

It was admitted by counsel for the plaintiff that a plan introduced in evidence as "Exhibit 1" was an accurate representation of the crossing and its vicinity as they appeared at the time of the accident.   It appears from this plan that Endicott Street runs approximately north and south, and the railroad track runs approximately east and west.

It is recited in the bill of exceptions that "By an order duly issued in 1903 by the then Board of Railroad Commissioners, and still in effect at the time of the accident, the whistling of locomotives of the defendant's railroad as a crossing signal was forbidden at the grade crossing where this accident happened."   G. L. c. 160, § 139.

On the morning of the accident a train of the defendant consisting of fifty freight cars was on its way from Worcester to Salem.  As the train approached the crossing it came to a stop a short distance west thereof to deliver five of the cars in the Peabody yard, which was located just east of the crossing.   These five cars were the second, third, fourth, fifth and sixth behind the engine.   The locomotive and the first six cars were uncoupled, and they proceeded over the crossing to the Peabody yard where five of the cars were left; the locomotive with the first car then backed down to couple onto the rest of the train;  the car attached to the engine was a box car, forty-eight feet long and thirteen or fourteen feet high.   While passing over the crossing the plaintiff's automobile collided with this car.

The plaintiff testified that as he approached the crossing he was driving his automobile at a speed of about eighteen miles an hour; that when he reached a point one hundred twenty-five feet from the crossing he decreased his speed; that when he was fifty feet from it he was going fifteen miles an hour;  that when he was about forty feet from it he was going between ten and twelve miles an hour;  that when he was six or eight feet from it he was going six or eight miles an hour;  that when he first saw the freight car it was about ten feet away, the front of his automobile was about two or three feet from the track, and he was going at a speed of six or eight miles an hour;  that the next he knew the collision occurred.   He further testified that it was dark; that as he approached the crossing he looked and listened for the train but did not see or hear it and did not hear any signals;  that he was familiar with the crossing and passed over it every day;  that at a point fifty feet from the track there was an unobstructed view from the direction in which the engine and car came except that it was dark;  that when he was twenty-five feet from the track he was travelling ten miles an hour, and could have stopped his automobile within ten feet of the track if he had seen the train;  that he could see down the track in the direction from which the train was coming only about twenty-five feet;  that he had strong headlights on

his automobile and could see at that time "an object the size of a man on the road about one hundred twenty-five feet ahead; that besides lighting up the road ahead, his headlights lighted things to the side some"; that the train travelled from the sidewalk on the right side of the street and stopped at the curb on the opposite side, a distance of about thirty feet. It appeared that there was a large electric street light of two hundred fifty candle power on the easterly side of Endicott Street, thirty-eight and six tenths feet from the nearest rail of the track at the crossing and twenty-one feet above the surface of the street.

It is obvious upon the plaintiff's own testimony that, although it was not daylight at the time, he must have seen the train if he had taken reasonable precautions for his safety. The witnesses called by him testified that they could see the freight car when it was two hundred feet away from them. If, as the plaintiff testified, he could see along the track only for a distance of twenty-five feet, the inference is irresistible that he would have been able to see the freight car, which was forty-eight feet long and thirteen or fourteen feet high, in time to avoid the collision. The two witnesses called by the plaintiff and all the witnesses called by the defendant who were present at the time of the accident testified, in substance, that the plaintiff's automobile ran into the freight car striking it between the forward and rear trucks, and that the radiator was wedged under the car.

We do not deem it material, in view of the testimony of the plaintiff, whether the freight car struck the automobile or the latter ran into it. The testimony of the plaintiff plainly shows that as he approached the railroad crossing, with which he was familiar, he failed to proceed cautiously. If he looked and could not see for a greater distance than twenty-five feet and then attempted to cross the tracks, he did not proceed cautiously, but acted without any regard for his safety. If it be assumed that the bell was not rung, as required by G. L. c. 160, § 138, and if it could not have been ruled that the plaintiff was guilty of gross and wilful negligence contributing to his injury, G. L. c. 160, § 232,

yet he was barred from recovery because of his violation of G. L. c. 90, § 15.   *Creeley* v. *Boston & Maine Railroad,* 263 Mass. 529.   *Fortune* v. *New York, New Haven & Hartford Railroad,* 271 Mass. 101, 105.   *Anthony* v. *Boston & Maine Railroad,* 276 Mass. 392, and cases cited.

If, by reason of darkness or for any other reason the plaintiff's view of the track was obstructed so that he was unable to see the approaching car and engine, it was his duty to act with reasonable care and caution and to stop until he could ascertain whether he could cross safely. *Debbins* v. *Old Colony Railroad,* 154 Mass. 402.   *Rogers* v. *Boston & Maine Railroad,* 187 Mass. 217, 219.   *Allen* v. *Boston & Maine Railroad,* 197 Mass. 298.

It follows that the defendant's motion for a directed verdict in its favor on all the counts should have been granted.   In view of the conclusion reached, it is unnecessary to consider the other exceptions saved by the defendant.

*Exceptions sustained.*
*Judgment for the defendant.*