JOSEPH CARCIONE, administrator, *vs.* BOSTON, REVERE BEACH AND LYNN RAILROAD COMPANY.

Essex. November 12, 1931. — March 2, 1932.

Present: RUGG, C.J., PIERCE, WAIT, & SANDERSON, JJ.

*Negligence*, Grade crossing, Violation of statute, Contributory.

In an action of tort against a railroad corporation for causing the death, on a crossing of the railroad with a public way at grade, of the plaintiff's intestate who had driven thereon in an automobile, the burden is on the plaintiff of proving that his intestate complied with the requirements of G. L. c. 90, § 15.

Section 15 of G. L. c. 90, requires that an operator of a motor vehicle approaching a railroad crossing at grade shall not only reduce the speed of the vehicle to a reasonable and proper rate when nearing the crossing, but thereafter shall proceed only at a speed which will permit him to stop at once if danger seems imminent.

The operator of a motor vehicle, who was familiar with the physical surroundings of a crossing of a railroad with a public way at grade, who knew that the view up the track, although partially obscured by fences, gave him an opportunity for observation of which he might avail himself and that he could see a train approaching when he was ten feet from the track, as a matter of law could not be found to have proceeded cautiously upon the crossing in a motor vehicle, as required by G. L. c. 90, § 15, if he merely reduced the speed of the vehicle when thirty feet from the track and then, relying on the fact that gates maintained by the railroad corporation at the crossing were not down and that he was given no warning by the gate tender, proceeded upon the crossing and was struck by a train and killed.

TORT for the causing, through negligence, of the death of John Carcione, the plaintiff's intestate. Writ dated January 10, 1929.

In the Superior Court, the action was tried before *Lummus*, J. Material evidence is described in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*W. G. Clark*, (*W. F. Craig* with him,) for the plaintiff.

*L. Wheeler, Jr.*, for the defendant.

WAIT, J. The plaintiff's intestate was killed in a collision between an automobile which he was driving and an electric train of the defendant at a grade crossing on Shepard Street, a public highway in Lynn. It is admitted that the defendant's negligence contributed to the accident. The crucial question is whether there was evidence which would sustain a finding that the intestate in approaching the crossing reduced the speed of his vehicle to a reasonable and proper rate and proceeded cautiously over the crossing as required by G. L. c. 90, § 15.

As was stated in *Fortune* v. *New York, New Haven & Hartford Railroad*, 271 Mass. 101, 105, this statute does more than establish a rule of due care to be considered in passing upon negligence where some one is injured; it sets up a positive requirement of conduct. A breach is an illegal action which is fatal to recovery of damages if the

offender is hurt in a collision at the crossing. *Creeley* v. *Boston & Maine Railroad,* 263 Mass. 529. *Jones* v. *New York, New Haven & Hartford Railroad,* 275 Mass. 139. *Anthony* v. *Boston & Maine Railroad,* 276 Mass. 392.

The burden was on the plaintiff to prove compliance with the statute. *Tazzini* v. *Boston & Maine Railroad,* 277 Mass. 108, 110.

The evidence taken most strongly for the plaintiff tended to show that about 7:11 o'clock on the evening of November 6, 1928, a dark but clear night, the intestate drove a motor vehicle at a speed of from ten to fifteen miles per hour from Harbor Street into Shepard Street, a distance of two hundred twenty-six feet from the crossing and proceeded toward the crossing. He slowed down as he drew near the rails almost to a stop at a point thirty feet from them, and then kept on till, as he reached the first, northernmost, rail of the defendant's tracks a train of three cars coming from the east struck his vehicle. A tight board fence four and a half feet high extended along the northerly line of the defendant's location. This shut off the lower part of the cars from sight. The upper part of the cars with electrically lighted windows showed above the fence and the lighted headlight of the leading car was slightly above the level of the top of the fence. The red and green lights on the cars were several feet above the line of the top. Along the easterly side of Shepard Street from Harbor Street to a point seven and eight tenths feet from the northerly rail, there was a picket fence six feet six inches high with spaces of two and a half inches between the pickets. There was a break six feet wide seventy-four feet north of the first rail. Through this opening a person in an automobile on Shepard Street could see for five hundred eighty-four feet toward the east, and it was possible to see through the spaces between pickets a train approaching from the east. This fence was on the intestate's left as he drove. At the end nearest the track, one in the middle of Shepard Street could see up the track to the east a distance of at least two hundred fourteen feet. From a distance of ten feet from the northerly rail one so placed could see one

hundred eleven feet to the east along the track. This distance grew greater as one got nearer the rail, and at two feet from the rail it was six hundred five feet. When four feet away one could see four hundred ninety-six feet along the track.

A gate tender was regularly stationed at the crossing to raise and lower gates on which red lights hung at night. On the occasion of the accident the gate tender failed to observe the approach of the train, which was two minutes late. The gates were up with their lights hanging three feet below the upper ends, as the intestate approached. The gate tender did not notice the coming train until it was about thirty feet from the crossing. He started to lower the gates but stopped when he found the northerly one would strike the hood of the automobile then almost at the northerly rail. The intestate was seen to look to right and to left about at the place he slowed when some thirty feet from the crossing. He was familiar with the locality. Three others who were in the automobile testified that they heard no bell or whistle signal from the train, and two of them, in the rear seats, said they looked and listened for a train but saw none through the fence. The train was moving at about twenty-five to thirty miles per hour.

Thus it appears that, although misled by the open gates, the intestate, after slowing, was not cautious in driving upon the crossing. One who was familiar with the physical surroundings, who knew how the view was obscured by a fence which, nevertheless, gave opportunity for observation that could be availed of, who knew that when ten feet from the rails one could see along the track a train near at hand, cannot be found to proceed cautiously if he trusts entirely to the closing of the gates or to warning from the gate tender. There is no escape from the fact that the train was in sight from a point ten feet away from the nearest rail. The statute expects one who slows in obedience to its mandate to move forward thereafter at a speed which will permit stopping if danger seems imminent.

The case is controlled in principle by *O'Meara* v. *Boston & Maine Railroad*, 277 Mass. 315. The ruling excepted to was right, and the order must be

*Exceptions overruled.*

*Judgment for defendant.*