VICTOR C. GERMAINE *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Berkshire.   September 21, 1937. — November 30, 1937.

Present: FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Negligence*, Grade crossing, Violation of law. *Evidence*, Presumptions and burden of proof.

The driver of an oil truck who crossed a railroad at a grade crossing under such conditions that, unless he looked carelessly, he must have seen an approaching train, violated G. L. (Ter. Ed.) c. 90, § 15, as amended by St. 1933, c. 26, § 1, and could not recover against the railroad corporation for injury resulting from being struck by the train.

A party to an action was bound by his own testimony as to what he could see, even though testimony of a witness called by him seemed to be more favorable to him.

TORT. Writ in the Superior Court dated June 20, 1936.

The action was tried before *Burns*, J. There were verdicts for the plaintiff aggregating $500. The defendant alleged exceptions.

The case was submitted on briefs.

*F. M. Myers*, for the defendant.

*L. S. Cain*, for the plaintiff.

QUA, J. This action is to recover for personal injury and property damage resulting from a collision at a grade crossing in Pittsfield between an oil truck driven by the plaintiff and a freight train of the defendant. The plaintiff had a verdict on his common law counts. The defendant excepts.

The accident happened March 31, 1934, at about six o'clock in the evening. Merrill Road, on which the plain-

tiff was proceeding in a southwesterly direction, crosses the single track railway at an acute angle, so that the train, which was moving southerly, came upon the plaintiff from his right hand side and rear. The plaintiff was "entirely familiar" with the crossing, having gone over it seven or eight times a day since November, 1932.

The plaintiff's own testimony was substantially this: It was raining and hailing, "one of those drizzling hard rains and a little bit of snow, not a hard storm, but a sleet storm." The plaintiff allowed the truck to come to a stop forty or fifty feet from the track. The right hand window was entirely open. One Graham, the plaintiff's helper, who was seated at the plaintiff's right, stuck his head out of the window, and the plaintiff also looked. He could not see to the right rear unless he leaned far over to the window and looked back. He leaned "as far over as he could across Graham." He "could see the outline of everything." He saw two tank cars on the spur track and some barrels and oil drums in the yard of the "Gulf station" at his right in the angle between the road and the railroad. Beyond these in the same general direction he saw tanks and empty oil drums on the ground at a point on premises on the east side of the railroad which appears from a photograph and plan incorporated in the record to have been at least four hundred feet to the plaintiff's right in the direction from which the train came, and which the defendant's engineer testified was about five hundred twenty-five feet from the center of Merrill Road. Farther still in the same direction he saw the lights on Dalton Avenue, which crossed the railroad more than fifteen hundred feet north of Merrill Road. He saw no headlight and no reflection of a light on the track. His own headlights and the Gulf station yard lights were on. From the point forty to fifty feet distant from the track where he had stopped the plaintiff continued on in second gear at not faster than seven miles an hour, looking mostly to the right. He could have stopped his truck within four feet. The nearer he got to the track the more he "had to stretch out to look up the track because the road and track came to a point."

Just before he crossed the track he "leaned forward and looked in a direction to the rear of the truck, just as far as the operation of the truck would permit him to," and "continued looking." When he was about two thirds over the track, Graham shouted, "Look out! Train," and the plaintiff "stepped on the gas" and was "knocked out." He saw no part of the train until after the accident. Then as he was being helped to the oil station he could see the outline of part of the rear end of the train down the track, making the turn into the yard. He saw no lights on any part of it. According to the plan this turn appears to begin about five hundred feet south of the center of the crossing. To the north of the crossing, from which direction the train came, the track appears to be straight for over two thousand feet, or as far as the plan accompanying the record extends.

Graham testified that it was "raining and hailing and very dark"; that, looking up the track to the north, he could see nothing except a few trees and the street lights and the headlights of cars on Dalton Avenue; that by looking backward the tanks mentioned by the plaintiff could be seen; that there was no headlight on the engine; and that he could hear no whistle or bell.

G. L. (Ter. Ed.) c. 90, § 15, as amended, required the plaintiff to "proceed cautiously over the crossing" as well as to observe the additional requirements put upon him as the driver of a motor vehicle carrying inflammable liquids by the amendment of 1933. (St. 1933, c. 26, § 1.) If we were to leave out the elements of darkness and invisibility, it would seem plain that the plaintiff on his own testimony must be deemed to have violated this section as it has been interpreted in our decisions. In no material respect would this plaintiff stand in any better position than did the plaintiff in *Klegerman* v. *New York, New Haven & Hartford Railroad*, 290 Mass. 268, a case very similar to this, wherein the court said, at page 276, that "In view of the universally known perils of a railroad crossing, the plaintiff did not proceed cautiously over the crossing" and therefore could not recover. The cases of *Creeley* v. *Boston & Maine Rail-*

road, 263 Mass. 529, *Fortune* v. *New York, New Haven & Hartford Railroad,* 271 Mass. 101, *Anthony* v. *Boston & Maine Railroad,* 276 Mass. 392, *Carcione* v. *Boston, Revere Beach & Lynn Railroad,* 278 Mass. 357, and `Gaboriault` v. *New York, New Haven & Hartford Railroad,* 289 Mass. 36, are also in point.

But the evidence as to darkness and invisibility does not materially change the complexion of this case or take it out of the authority of those just cited. The plaintiff is bound by his own testimony as to what he could see, even though Graham's testimony seemed to indicate that he could see less. *Laffey* v. *Mullen,* 275 Mass. 277, 278. *Butler* v. *Graves,* 284 Mass. 84, 85. Compare *Whiteacre* v. *Boston Elevated Railway,* 241 Mass. 163, 165, 166. The accident happened just before or at about the time of sunset on March 31. In spite of the storm the darkness could not have been that of midnight. The plaintiff, when he stopped, "could see the outline of everything." He saw objects much smaller than a freight train several hundred feet away in the direction from which the train was coming, but even farther toward his right and rear than the train could have been. There was nothing between him and the train. At any time after that he could have stopped within four feet, and he says that he continued to look. After the accident he saw the train several hundred feet away. Consistently with our previous decisions we must conclude that if the plaintiff looked he looked carelessly, *Allen* v. *Boston & Maine Railroad,* 197 Mass. 298, *O'Meara* v. *Boston & Maine Railroad,* 277 Mass. 315, and that he should have become aware of the approach of the train, even if it was not lighted and if the statutory signals were not given, although the jury's verdicts for the defendant on the statutory counts are hard to reconcile with the theory that the signals were not given. The case is readily distinguishable from *Eisenhauer* v. *Boston & Maine Railroad,* 285 Mass. 439, and *Lincoln* v. *New York, New Haven & Hartford Railroad,* 291 Mass. 116.

*Exceptions sustained.*
*Judgment for the defendant.*