HAZEL COTE, as Ancillary Administratrix, etc., of JOSEPH A. COTE, Deceased, Respondent, v. BOSTON & MAINE RAILROAD, Appellant.

Hill, P. J., Crapser and Heffernan, JJ., concur; McNamee and Bliss, JJ., dissent and vote to reverse the judgment and order and to dismiss the complaint, with an opinion by Bliss, J., in which McNamee, J., concurs.

BLISS, J. (dissenting). Late on the afternoon of Sunday, August 2, 1936, Joseph A. Cote was killed when his Plymouth coupe, which he was driving across the tracks of the Boston and Maine Railroad at Blackinton, Mass., was struck by a freight train. In the car with him, at the time of the accident, were his wife, Hazel Cote, the administratrix here, and their thirteen-year-old daughter Louise, who saved themselves by jumping from the car before it was struck by the train. This action is brought against the railroad for negligence and seeks in a first cause of action damages for the death of the decedent and in a second damages for his conscious pain and suffering. The jury returned a verdict of $6,000 in favor of the plaintiff on the first cause of action and disagreed as to the second. Thereafter, on plaintiff's motion, an order was made severing the two causes of action and granting the plaintiff judgment against the defendant on the first for the amount of the verdict and costs. It further provided that the second cause of action remain on the calendar and be tried separately and that the order thus made is without prejudice to the review, upon an appeal from the judgment, of the denial of the defendant's motion to dismiss the complaint made during the trial. The defendant has appealed from both the judgment and order.

The main tracks of the Boston and Maine Railroad through Blackinton run in an easterly and westerly direction. The station is located on the north side of the tracks. Massachusetts avenue, which apparently is one of the principal streets, parallels the railroad tracks some distance to the north and a street leads from Massachusetts avenue southerly to the west side of the station. A dirt road continues in the same direction as the street by a plank crossing maintained by the railroad across the two tracks, down a slight grade between some fence-posts, called on the trial a gate, and thence through some woods to an open field. This field was owned and used by the Barber Leather Company and was also

permitted by it to be used by a local baseball club for exhibition games. A grandstand had been erected and games, to which the public was invited and admission charged, were frequently held there during the playing season. At times, while games were in progress, a considerable number of persons crossed and recrossed the railroad tracks in going to and from the games, and a railroad police officer was on occasion stationed at the crossing to direct traffic and warn of approaching trains. Some distance to the west of this crossing was a public crossing known as River street. The west-bound whistling post for the River street crossing was located east of the railroad station, but not eighty rods to the east of it. Plaintiff had used this crossing in attending ball games for seventeen years. On the day of the fatal accident plaintiff's intestate left the baseball field about five-fifteen P. M., daylight saving time, drove along the dirt road, which he had used on many previous occasions, through the gate, up the grade and onto the tracks. The woods, which obstructed the view of the tracks, ended some distance south of the gate, but there was brush between the woods and track, which also obstructed the view of the tracks until the traveler reached the gate, and possibly for some unestablished distance farther. The plaintiff testified that her husband drove his car in first gear and then shifted into second gear at the gate. They looked at this point and she saw no train. As they went up the grade she said that she was looking both ways and that the first time she saw the train was when the car was on the east-bound track. She opened the door and she and her daughter jumped out. The automobile proceeded on to the west-bound track and was struck, with the result that her husband was killed. She said she listened and heard neither whistle nor bell as they were approaching the tracks. There were no warning signs erected at the crossing and no watchman on duty that day. The planking was rather rough and bumpy, the train did not slow up until after it had passed the crossing, and the automobile did not come to a complete stop at any time before it was struck. She saw her husband look up the track to the east when the car was between the fence and the tracks.

A photograph, taken the day after the accident from a point in the center of the roadway, sixteen feet, seven inches south of the south rail of the east-bound track and thirty-one feet, six inches from the south rail of the west-bound track, shows an unobstructed view of the tracks toward the east for a distance later shown by an engineer to be 2,542 feet. Another photograph taken from the same point at the same time shows an unobstructed view toward the west along the tracks for 2,300 feet. The train, which contained forty-one freight cars, was running west at about thirty-five miles per hour on the northerly track. There was no whistling post for the crossing where the accident happened and never had been. The engineer testified that the engine bell was ringing continuously and automatically from a point a mile and a half east of the crossing and that he blew the whistle at the post for the River street crossing. As the whistle blast died out he saw the automobile come up from the road on the south side of the track and it stopped on the track ahead of him when the engine was about 100 feet from the crossing. A witness who was sitting on the steps of the freight house, northwest of the crossing, heard the train approaching, saw the car come up slowly onto the tracks and stop just before it was struck with the front wheels on the west-bound tracks.

Both causes of action are based upon negligence and also upon failure on the part of the defendant to comply with sections 138, 139, 140 and 232 of chapter 160 and section 3 of chapter 229 of the General Laws of Massachusetts. The second cause of action also pleads a statutory basis in section 6 of chapter 229. The answer, in addition to the denial of any negligence on the part of the railroad, alleges contributory negligence, gross and willful negligence and violation of section 15 of chapter 90 of the General Laws of Massachusetts on the part of the plaintiff's intestate.

A review of the pertinent Massachusetts statutes is necessary. Section 3 of chapter 229 of the General Laws makes a corporation operating a railroad which, by reason of its negligence, causes the death of a person in the exercise of due care liable in damages in the sum of not less than $500, nor more than $10,000, to be assessed according to the degree of culpability and to be recovered in an action of tort. Section 6 of the same chapter provides that in any civil action brought under section 3 damages may be recovered under a separate count for conscious suffering resulting from the same injury.

Section 138 of chapter 160 of the General Laws of that Commonwealth states that every railroad corporation shall cause a bell to be rung or a whistle sounded at the distance of at least eighty rods from the place where the railroad crosses any public way or traveled place at grade at which a signboard is required to be maintained as provided in sections 140 and 141 of the same chapter, and to be rung or sounded continuously or alternately until the engine has crossed such way or traveled place. Section 140 directs every railroad corporation to cause certain signboards to be placed and maintained across each public way where it crosses a railroad at the same level, and section 141 of the same statute provides for signboards at crossings of traveled places where the board of aldermen of a city or the selectmen of a town so request.

Section 232 of chapter 160 provides that if a person is injured by the collision with the engine of a railroad corporation at a crossing such as is described in section 138 and it appears that the corporation neglected to give the signals required by such section and that such negligence contributed to the injury, the corporation shall be liable for all damages caused by the collision, or if the life of a person so injured is lost, to damages recoverable in tort as provided in section 3 of chapter 229, unless it is shown that in addition to a mere want of ordinary care the person injured was at the time of the collision, guilty of gross or willful negligence or was acting in violation of the law and that such gross or willful negligence or unlawful act contributed to the injury.

By section 15 of chapter 90 of the General Laws of Massachusetts it is made mandatory that any person operating a motor vehicle, upon approaching a railroad crossing at grade, shall reduce the speed of the vehicle to a reasonable and proper rate, and shall proceed cautiously over the crossing, and a violation is punishable by a fine.

The trial court charged that the statutory signals were not necessary at a private crossing, but that if the railroad invited or induced a person to treat a private way as a public way, then it became the duty of the railroad company to give the usual signs of warning when a train approached such crossing. The court directed the jury to decide whether the railroad company, by implication,

acquiesced in the public's using this crossing and held out to the public an invitation to use it, and that if they found that such was the fact, then they were to treat the crossing as public and that the company was then under obligation to give the statutory signals provided for a public crossing.

On the subject of contributory negligence, the court charged in substance that the burden was on the defendant to show that the deceased was guilty of gross or willful negligence which contributed to his injury and that if the failure of the defendant to give a statutory signal contributed to the accident and death and deceased was not grossly negligent himself in contributing to the accident, then the plaintiff should recover. The court declined a request upon the part of the defendant to charge that this was a private crossing and the defendant was not bound to give the statutory signals. It also declined defendant's request to charge that if deceased was guilty of any negligence which contributed to the accident there could be no recovery, and that it was not necessary for defendant to prove gross negligence as a defense.

Plaintiff claimed her proof showed that this was not a private crossing, that the defendant had induced or invited the public to use it, and that, therefore, it became a public crossing, necessitating the giving of the statutory signals under section 138 of chapter 160, which the railroad failed to do. No attempt was made to show that any public authorities had requested signboards under section 141. Nor did she show that this crossing had ever been dedicated or laid out as a public way or that it had ever been in any way recognized or treated as such by the authorities. She relies in great measure upon *Hanks* v. *Boston & A. R. R. Co.* (147 Mass. 495; 18 N. E. 218); *Johanson* v. *Boston & M. R. R. Co.* (153 Mass. 57; 26 N. E. 426) and *Murphy* v. *Boston & A. R. R. Co.* (133 Mass. 121) and similar cases to sustain her in this regard. Their holdings are discussed in the later cases of *Moffatt* v. *Kenny* (174 Mass. 311; 54 N. E. 850) and *Bowler* v. *Pacific Mills* (200 Mass. 364; 86 N. E. 767). In the former the court said: " If one passing over land as a mere licensee, for his own purposes, should be told by the owner that he would find a certain course safe and convenient and should walk there, the representation of the owner would impose upon him a duty to use reasonable care to have the place safe for the person acting on his statement; or, if he should represent a way across his land to be a public street, his representation would be equivalent to a statement that the place was safe and convenient for travelers, and it would be his duty towards one induced to use it by his representation, to keep it as safe as if it were a public street. (See *Plummer* v. *Dill*, 156 Mass. 426–430; 31 N. E. 128; *Sweeny* v. *Old Colony & Newport R. R. Co.*, 10 Allen, 368; *Holmes* v. *Drew*, 151 Mass. 578; 25 N. E. 22; *Murphy* v. *Boston & A. R. R. Co.*, 133 Mass. 121; *Hanks* v. *Boston & A. R. R. Co.*, 147 Mass. 495; 18 N. E. 218.) "

In the *Bowler* case Knowlton, Ch. J., wrote: " The grounds of distinction between *Murphy* v. *Boston & Albany Railroad*, 133 Mass. 121; *Hankens* v. *Boston & Albany Railroad*, 147 Mass. 495; and *Sweeny* v. *Old Colony & Newport Railroad*, *ubi supra*, and cases like the present, are pointed out in the three cases first above cited. It is that in these last cases there was an implied representation that the place was a public street which might be used with safety, and an inducement to use it as such, which inducement, like an express invitation, creates a duty to provide for the safety of the users."

The defendant contended that this was a private crossing and even if the proof were assumed to be sufficient to raise a question of fact as to inducement or invitation, that did not make it a public crossing although it might change the status of deceased from a mere licensee to an invitee requiring defendant to give reasonable warning, and that section 138 of chapter 160 of the General Laws of Massachusetts did not apply. It urged also that gross contributory negligence was not essential to its defense but that ordinary contributory negligence would suffice in that regard. It said further that even if Massachusetts General Laws, chapter 160, section 232, did apply, deceased violated Massachusetts General Laws, chapter 90, section 15, as a matter of law in failing to proceed cautiously over the crossing.

If this was a private crossing, then sections 138 and 140 of chapter 160 of the Massachusetts General Laws did not apply. (*Berube* v. *New York, N. H. & H. R. R. Co.*, 234 Mass. 415; 125 N. E. 629; *Davis* v. *New York, N. H. & H. R. R. Co.*, 272 Mass. 217; 172 N. E. 214.) No public way by prescription was or could be established. (Mass. Gen. Laws, chap. 160, § 114.) "From the foregoing facts it is plain that the way over this crossing where the plaintiff's intestate was injured, was laid out as a private farm crossing under the reservation contained in the deed from Samuel B. Allen in 1862. Allen used it as such, and with the permission of the railroad company, until his death in 1890 or later. No other or more extensive right was created by prescription prior to 1892, and none could be so acquired across a railroad track since that date. St. 1906, c. 463, pt. 2, § 125." (*Berube* v. *New York, N. H. & H. R. R. Co.*, 234 Mass. 415; 125 N. E. 629, 630.)

The duty of the railroad to the decedent, if found to be an invitee, was that of reasonable care commensurate with the circumstances. "If we assume that the intestate came within the terms of the invitation extended by the defendant to his employer to come to the freight house, the intestate was an invitee to whom the defendant owed the duty of exercising reasonable care." (*Davis* v. *New York, N. H. & H. R. R. Co.*, 272 Mass. 217; 172 N. E. 214. See, also, *Berube* v. *New York, N. H. & H. R. R. Co.*, *supra*.) From these cases and others of the same import it appears that the trial court was in error when it charged the jury that if it found that the defendant invited the public to use this crossing while ball games were going on, and if it was a public crossing, that then the company was under the obligation to give the statutory signals provided for public crossings. Insofar as we are able to ascertain, the Massachusetts authorities do hold that where a railroad has led the public to believe that a grade crossing may be used by it, it amounts to an implied invitation so to use it and the duty of the railroad then becomes one of reasonable care as to such invitees. It is quite true that it has been said that the duty of the railroad in such an instance is the same as if it were a public crossing. We do not understand this to mean, nor has any Massachusetts case been called to our attention, which holds that in such an instance the railroad must give the statutory signals, and in the absence of direct authority in that jurisdiction we should not thus extend the previous rule of reasonable care.

But even if we assume that the trial court did not err in thus charging that the jury might find that this crossing came within the meaning of a public way under sections 138 and 140 of chapter 160 of the General Laws of Massachusetts, the

charge was not correct with respect to contributory negligence. Section 232 of chapter 160 of the General Laws of Massachusetts makes the railroad liable if this was a public way and its neglect to give the statutory signals contributed to the accident unless it is shown that the person injured was at the time of the collision, guilty of gross or willful negligence or was acting in violation of the law and that such gross negligence or unlawful act contributed to the injury. It has been held that a violation of section 15 of chapter 90 is a " violation of the law " within the meaning of section 232 of chapter 160, and bars recovery under that section. (*Fortune* v. *New York, N. H. & H. R. R. Co.*, 271 Mass. 101; 170 N. E. 923.) Consequently, the charge of the trial court was erroneous with respect to the contributory negligence of the deceased. While it is true that the decedent's gross contributory negligence bars recovery, also his failure to proceed cautiously over the crossing likewise bars recovery. However, the trial court did not charge this and proper exception was taken by the defendant.

The charge with respect to contributory negligence as a defense was also erroneous if plaintiff's intestate was an invitee and this a private instead of a public way. Under those circumstances, Massachusetts General Laws, chapter 160, section 232, would have no application, but ordinary contributory negligence would still be a defense. (*Cotter* v. *Boston, R. B. and L. R. R. Co.*, 237 Mass. 68; 129 N. E. 426; *Davis* v. *New York, N. H. & H. R. R. Co.*, 272 Mass. 217; 172 N. E. 214.) Further, chapter 229, section 3, gives a right of action only when the person killed is " in the exercise of due care."

The errors below thus far discussed would compel us to reverse the judgment and direct a new trial. But as contributory negligence on the part of the decedent would bar a recovery here on both causes of action whether the crossing was public or private, this complaint must be dismissed upon the ground that decedent was guilty of contributory negligence as a matter of law. The defendant has the burden of establishing this defense. " The defense that the person injured ' was acting in violation of law ' and that such ' unlawful act ' was a cause contributing to his injury stands on the same footing in the statute as does his ' gross and wilful negligence.' They are coupled together in the same sentence. The same rule of law as to burden of proof applies to both. * * * Where a question of fact is presented on this aspect of a case, the burden of proof of showing that the plaintiff was acting in violation of law and that such unlawful act contributed to his injury is upon the defendant." (*Klegerman* v. *New York, N. H. & H. R. R. Co.*, 290 Mass. 268; 195 N. E. 341, 344.)

The Massachusetts rule as to one driving a motor vehicle over a railroad crossing at grade, be it public or private, is even stricter than that of New York. Here the rule is reasonable care. There it is active diligence. And we must apply the law of the situs, whether we will or no. (*Cuba R. R. Co.* v. *Crosby*, 222 U. S. 473, 478.) The Massachusetts statute (Gen. Laws, chap. 90, § 15) says " cautiously." " The statute does more than establish a rule of due care to be considered in passing upon the contributory negligence of one who is injured. It imposes a penalty for its violation which is incurred if the statute is broken, without regard to whether an accident happens or not. * * * It is a rule of public policy designed to promote the general welfare of travelers upon railroads as well as upon ways. It is not satisfied when, as here, one so driving has opportunity to observe the approach of a train, and for at least two minutes before reaching a crossing

neglects to look in both directions to make certain no train is drawing near, and goes on the crossing with a train close upon him. Such conduct is not cautious, that is, actively diligent." (*Fortune* v. *N. Y., N. H. & H. R. R. Co.*, 271 Mass. 101, 105; 170 N. E. 923.) "This statute does more than establish a rule of due care °to be considered in passing upon negligence where someone is injured; it sets up a positive requirement of conduct. A breach is an illegal action which is fatal to recovery of damages if the offender is hurt in a collision at the crossing." (*Carcione* v. *Boston, R. B. and L. R. R. Co.*, 278 Mass. 357; 180 N. E. 216.)

The cases in that jurisdiction are many which hold that conduct even more diligent than that of this decedent barred recovery. A few citations will be adequate. *Anthony* v. *Boston & M. R. R. Co.* (276 Mass. 392; 177 N. E. 564) is an example of the kind of conduct the Massachusetts court has held to be negligent as a matter of law as well as a violation of General Laws (Chap. 90, § 15). It said: "The only rational conclusion from the entire evidence is that the train was in plain sight when he was within thirty-five feet of the crossing. If he did not see it at that time he either looked carelessly or did not look at all. He drove on the crossing, paying no attention to the imminent danger which he ought to have guarded against and which, with proper care, he could have avoided. This was negligence on his part."

Another is *Davis* v. *N. Y., N. H. & H. R. R. Co.* (272 Mass. 217; 172 N. E. 214), where it is held, "The uncontradicted testimony showed that from the westerly rail of the side track at about the point where Denham crossed the main track to the south the latter could be seen at least for a distance of three hundred forty feet notwithstanding the presence of the freight cars on the side track. If the approaching train was not within Denham's vision from this point due to the presence of the freight cars and he nevertheless elected to drive ahead, he was under the burden of looking at the first opportunity when he had a clear vision of the main track, and if he failed to do so he would be precluded from recovery."

In *O'Meara* v. *Boston & M. R. R. Co.* (277 Mass. 315; 178 N. E. 525) the court stated: "If, by reason of darkness or for any other reason the plaintiff's view of the track was obstructed so that he was unable to see the approaching car and engine, it was his duty to act with reasonable care and caution and to stop until he could ascertain whether he could cross safely."

Approaching without looking or looking without seeing bars recovery under the Massachusetts law. (*Carville* v. *N. Y. Central R. R. Co.*, 53 F. [2d] 153.)

It was held in *Carcione* v. *Boston, R. B. and L. R. R. Co.* (*supra*) that one who was familiar with the physical surroundings, who knew how the view was obstructed by a fence, which, nevertheless, gave opportunity for observation that could be availed of, who knew that ten feet from the rails one could see along the track a train near at hand, cannot be found to proceed cautiously if he trusts entirely to the closing of the gates or to warning from the gatetender and that although misled by the open gates, the intestate after slowing down was not cautious in driving upon the crossing. The court said that there was no escape from the fact that the train was in sight from a point ten feet away from the nearest rail and that the statute expects one who slows in obedience to its mandate to move forward thereafter at a speed which will permit stopping if danger seems imminent. This was a death case in which plaintiff's intestate was killed in a collision between an automobile which he was driving and an electric train of

defendant at a public grade crossing when the gatetender who was regularly stationed there failed to observe the approach of the train and in which it was admitted that the defendant's negligence contributed to the accident.

The defense in the instant case is far stronger than these. Here the plaintiff's intestate had a clear view of the tracks in each direction for over 2,000 feet when he was thirty-one and one-half feet south of the south-bound rail of the west-bound track and sixteen feet south of the south rail of the east-bound track and this clear and unobstructed view continued from that point until he was upon the very tracks themselves. It cannot be said that under these circumstances he was proceeding cautiously or even with due care over the crossing. The plaintiff's intestate violated his duty as a matter of law under the Massachusetts decisions and the complaint should have been dismissed as to both causes of action.

The judgment and order should be reversed and the complaint dismissed, with costs.

McNamee, J., concurs.