RUSSELL A. EISENHAUER *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.   November 15, 1933. — February 23, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Negligence,* Railroad; Grade crossing, Contributory, Gross, Violation of statute.

Evidence, at the trial of an action against a railroad corporation under G. L. (Ter. Ed.) c. 160, § 232, for personal injuries sustained when the plaintiff was struck by a train of the defendant at a grade crossing, that the plaintiff listened for several seconds before going onto the crossing but heard no signal by whistle or bell from the locomotive, warranted a finding that the statutory signals required by § 138 were not given, although there also was evidence that a high wind was blowing in the direction from which the train approached.

There was further evidence at the trial above described that the plaintiff was familiar with the crossing and knew that it was dangerous; that he, operating an automobile, approached the crossing at dusk when it was difficult to see; that, when about one hundred feet from the crossing, he looked at the protective device consisting of a gong and flashing red lights, but the gong was not ringing and the lights were not flashing; that, beginning at a point two hundred fifty to three hundred feet from the crossing, he reduced the speed of his automobile gradually and finally stopped four feet therefrom; that he then looked in both directions, having a view to his left of about six hundred feet, and listened for several seconds but heard no locomotive whistle or bell; that he then started forward in low gear at the rate of two miles an hour, and looked again at the protective device, but did not hear the gong ringing nor see the lights flashing; that the automobile stalled on the track; that he then looked to his left again and saw the train approaching rapidly two hundred fifty or three hundred feet away; that it was running between two embankments which sloped upward from the roadbed and had the appearance when seen of emerging from a tunnel; that the headlight of the locomotive was not lit; and that the plaintiff immediately attempted to escape but was struck by the train. *Held,* that

(1) It could not properly have been ruled as matter of law that the defendant had sustained the burden of proving that the plaintiff was guilty of gross or wilful negligence contributing to his injury within the meaning of G. L. (Ter. Ed.) c. 160, § 232;

(2) A finding was warranted that the plaintiff complied with G. L. (Ter. Ed.) c. 90, § 15, both by reducing the speed of his automobile to a reasonable and proper rate upon approaching the crossing and by proceeding cautiously upon the crossing;

(3) A verdict for the plaintiff was warranted.

TORT. Writ in the District Court of Chelsea dated March 4, 1932.

Upon removal to the Superior Court, the action was tried before *Beaudreau,* J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendant upon each count of the amended declaration and reported the action for determination by this court.

*F. L. Simpson,* (*J. A. Treanor, Jr.,* with him,) for the plaintiff.

*J. DeCourcy,* for the defendant.

PIERCE, J. This is an action of tort brought to recover damages for injuries sustained by the plaintiff on February 1, 1932, when his automobile, which he was driving, was struck by a railroad train operated by the defendant. The accident happened on Westview Street, a public high-

way in Bedford, Massachusetts, where the railroad crosses the street at grade. The plaintiff's declaration, as amended, is in five counts: The first count alleges negligent operation by the defendant of a locomotive and train; the second, failure of the defendant to give the statutory signals required by G. L. (Ter. Ed.) c. 160, § 138; the third, negligent failure to maintain certain signal lights and bells which the defendant was required by law to maintain on Westview Street at the point where the railroad track crossed Westview Street; the fourth, negligence in driving a train at an excessive rate of speed at a grade crossing at Westview Street; and the fifth, general negligence of the defendant's servants and agents. The answer of the defendant is a general denial and the defences of contributory negligence, gross negligence and violation of law on the part of the plaintiff. At the close of the evidence the trial judge granted a motion of the defendant for a directed verdict in its favor on all the counts of the plaintiff's declaration, and reported the case to this court on the stipulation of the parties: "If I was right in ordering a verdict for the defendant judgment shall be entered on the verdict for the defendant; if, however, the plaintiff is entitled to recover on any count in his declaration judgment shall be entered for the plaintiff on such count in the sum of $12,500." We shall consider the case on the position taken by the plaintiff in his brief, that he was entitled to have had the case submitted to the jury "Because there was evidence that the defendant failed to give the statutory signals and that failure contributed to the accident and because there was evidence which would warrant a jury in finding that the plaintiff was not guilty of gross or wilful negligence or violation of law."

The facts material to the issue tendered by the plaintiff are as follows: the plaintiff was thirty-seven years old at the time of the accident. He lived at a house distant about a quarter of a mile west of the grade crossing at Westview Street, Bedford. He was familiar with the crossing and had been going over it for a period of eight years. He had been over it twice a day for a week before the accident.

He knew that trains ran over it during the day and evening, but he did not know the exact times at which they ran. He knew that trains ran both ways; he did not know from which direction they came at any particular time. Westview Street, running approximately east and west, crosses at grade a single track of the defendant's railroad which runs approximately north to Bedford and south to Lexington. On February 1, 1932, the plaintiff owned a second hand automobile. It was registered in his name and he had a license to operate it. He finished his work in Lexington on that day at about 4:30 P.M. and started for home in his automobile. It was a clear day with some cloudiness and very cold, and there was a high northwest wind. He came to Westview Street and proceeded thereon in a westerly direction toward the crossing. He was driving at a speed of about twenty miles an hour and when he reached a point two hundred fifty to three hundred feet from the track, which he knew he was approaching, he slowed to twelve or fifteen miles an hour. He knew there was a cross arm with the marking "Railroad Crossing. Stop, Look and Listen" on it, located ninety-five feet from the railroad track in the direction from which he was then coming. He knew that the crossing was a dangerous one. It was getting dusk and difficult to see. He knew that the crossing was equipped with warning bells and flashing signals. Above the ground there were about six or eight red lights that formed the under side of a circle, and flashed back and forth one at a time when the train was coming. The gong was located a little below the lights, and it was agreed that it "begins to ring and the lights begin to go red when the train is approximately two thousand feet from the grade crossing and as it approaches the crossing from either direction . . . [and] that that is what the gong and the lights did when they are functioning"; the plaintiff "looked at the protective device known as the flasher and bell when he had reached a point in his progress toward the crossing about one hundred feet from the track," and "there was no bell ringing and no lights

flashing." He "looked as he approached that crossing because he wanted to make sure there was no train near at hand." He "knew he did not have any right to rely alone on the signals at a railroad crossing to inform himself of an approaching train." He "did not see the red lights flashing . . . [and] knew he had to depend more and more on his own senses of sight and hearing." At a point opposite the "cross arm," ninety-five feet east of the crossing he slowed the speed of his automobile to eight or ten miles an hour; before that he had been driving at a speed of twenty-five miles and began to slow to twelve or fifteen miles an hour when he was about three hundred feet from the crossing. From the point opposite the cross arm he proceeded at the rate of about four miles an hour until he was four feet from the crossing and there stopped completely, because it was getting dusk and difficult to see. He looked to his left down the track for four seconds and there was no train in sight. He listened and heard no train whistle or bell. His automobile was stopped about eight or ten seconds. When he was four feet from the crossing he had a view down the track to his left of six hundred feet or more. He then looked to the right for four seconds and had a view in that direction for a distance of a mile. He knew that it was safe to cross as far as a train coming from the right was concerned. He next looked at the signal at the crossing to see whether or not it indicated a train was approaching from his left. To see the signal he had to look up in the air and could not do so unless he stooped down and looked out the window of his automobile. He did not hear the bell ringing or see the red lights flashing at the crossing. He had put his automobile in low gear before he started to move forward, and at the time he looked up at the signal he was moving forward at the rate of two miles an hour. When he got on the track his automobile stalled. He then glanced down the track again to his left and saw the train about two hundred fifty or three hundred feet away approaching at a speed of about fifty miles an hour. He did not notice whether the cars

were lighted, and thought he could have gone over the tracks safely if his automobile had not stalled. Immediately the plaintiff attempted to escape and had one foot out of the automobile when the train struck him.

It is the defendant's contention that the plaintiff has no cause of action under count 2 of his declaration, because his conduct was a violation of G. L. (Ter. Ed.) c. 90, § 15, which provides: "Every person operating a motor vehicle, upon approaching a railroad crossing at grade, shall reduce the speed of the vehicle to a reasonable and proper rate, and shall proceed cautiously over the crossing. Whoever violates any provision of this section shall be punished by a fine of not less than ten nor more than fifty dollars."· The evidence above referred to in its aspect most favorable to the plaintiff's contention would warrant the jury in finding that the statutory signals required by G. L. (Ter. Ed.) c. 160, § 138, were not given. It could not have been ruled as matter of law that the defendant had sustained the burden of proving that the plaintiff was guilty of gross or wilful negligence contributing to his injury within G. L. (Ter. Ed.) c. 160, § 232. The issue being one for the jury on the evidence in the case, it follows that the only question is, Was the plaintiff's conduct a violation of G. L. (Ter. Ed.) c. 90, § 15, in that the plaintiff in approaching the grade crossing at Westview Street did not "reduce the speed of . . . [his] vehicle to a reasonable and proper rate," or did not "proceed cautiously over the crossing"? Assuming the burden of proof in this regard is upon the plaintiff, as "a rule of public policy designed to promote the general welfare of travelers upon railroads as well as upon ways," *Fortune v. New York, New Haven & Hartford Railroad,* 271 Mass. 101, 105, on the issue of the manner in which the plaintiff approached the railroad crossing at grade, the jury on the testimony of the plaintiff warrantably could have found that the automobile was completely stopped at a point four feet from the crossing, was driven onto the crossing and upon the track at a speed of two miles an hour, and

so proceeded until it stalled without the negligence of the plaintiff. If the jury were warranted on the evidence in so finding, as they clearly were, it could not have been ruled that the plaintiff had violated the provisions of G. L. (Ter. Ed.) c. 90, § 15, in the manner he operated his automobile upon approaching the grade crossing.

Did the plaintiff violate G. L. (Ter. Ed.) c. 90, § 15, in not proceeding cautiously over the crossing? The jury would have been warranted in finding that no whistle was sounded or bell rung on the locomotive and that no bell was sounded on the warning post. They could have found, even though they found that the whistle was sounded and the bell rung which was not heard because of the direction of the wind, that the plaintiff was actively diligent in listening for such sounds, and, hearing none, proceeded cautiously over the crossing and they would have been warranted in finding on the evidence above referred to that the plaintiff was cautious in the use of his eyes and in relying upon what they told him or failed to tell him. The train was running between two embankments which sloped upward from the roadbed, and there was evidence that it was run with its headlight not lighted and had the appearance when seen of emerging from a tunnel. There is nothing in the evidence which would justify a ruling that the plaintiff proceeded without caution over or upon the crossing because of the stalling of the automobile driven by him.

It results, in accordance with the stipulation of the parties, that judgment for $12,500 for the plaintiff on count two of his declaration is to be entered.

*So ordered.*