ONIAS GABORIAULT *vs.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Bristol.    October 22, 1934. — January 2, 1935.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & LUMMUS, JJ.

*Negligence,* Violation of statute, Motor vehicle, Grade crossing.

At the trial of an action of tort against a railroad corporation for damages resulting from a collision between a motor vehicle operated by the plaintiff and a train of the defendant at a grade crossing of the railroad and a public way, it appeared that the motor vehicle was a heavily loaded truck with a cab for the driver; that the way approached the crossing at a rising incline; that the plaintiff was familiar with the crossing; that the position of his driver's seat, the arrangement of a window in the cab and of the load back of the cab and the sharp angle at which the way intersected the tracks made observation of the tracks in the direction from which the train approached difficult for the plaintiff, although there was otherwise a clear view of the tracks for a considerable distance in that direction as he approached; and that neverthe-

less the plaintiff did not stop to take observations, but drove slowly upon the crossing without hearing or seeing the train, and knowing that he could not see a sufficient distance down the tracks in that direction. *Held*, that as a matter of law the plaintiff violated G. L. (Ter. Ed.) c. 90, § 15, and was precluded from recovery.

TORT. Writ dated June 25, 1932.

In the Superior Court, the action was tried before *Hanify*, J. Material evidence is described in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*A. Auger*, (*U. Auger* with him,) for the plaintiff.

*E. J. Phillips*, for the defendant.

PIERCE, J. This is an action of tort to recover for personal property damages by reason of a locomotive of the defendant striking the truck of the plaintiff at a railroad crossing. The case was tried to a jury. At the close of all the evidence the defendant requested the judge to rule "upon the pleadings and upon all the law and the evidence the plaintiff is not entitled to recover," and moved "that a verdict be directed in favor of the defendant." This motion was allowed, but before its allowance the parties "stipulated" and "agreed" "that if the court erred in directing a verdict for the defendant, judgment is to be entered for the plaintiff in the sum of $2,500."

The plaintiff's declaration is in two counts. The first count, as amended, in substance alleges that the plaintiff was "owner of a Federal truck and that while the same was being properly operated on the highway, in Freetown, next north to the so called Braley Station, on or about July 22, 1931, said truck having reduced speed to a reasonable and proper rate and having proceeded cautiously over the crossing, the defendant so carelessly and negligently operated a train and so failed to give suitable warning of the approaching of said train, and further failed to comply with the law pertaining to signals, G. L. c. 160, § 138, that the same ran into the truck . . . so as to entirely demolish the same and to render it of no value, to the damage of the plaintiff." The second count alleges that the plaintiff on July 22, 1931, "was the owner of a Federal truck and while

properly proceeding on the highway in Freetown at a railroad crossing on Braley Road, on said day, the defendant corporation or its agents, servants, and employees, acting for the defendant within the scope of their employment, carelessly and negligently ran, operated and managed one of the defendant's trains whereby the truck of the plaintiff was struck by said train and was demolished, wherefore the defendant is liable for the damages suffered by the plaintiff in the amount set forth in the writ."

The defendant denied each and every allegation in the plaintiff's writ and declaration contained, and further answering said "that at the time of the accident . . . the plaintiff was guilty of negligence which contributed thereto; that by reason thereof the plaintiff is not entitled to recover . . . that prior to and at the time of the accident . . . the plaintiff was guilty of gross and wilful negligence and was acting in violation of law; that such gross, wilful and unlawful acts contributed to and were the sole cause of the accident; that by reason thereof the plaintiff is not entitled to recover."

A view was taken by the jury. The bill of exceptions contains "all the evidence submitted upon the trial material to the issues raised by these exceptions."

The bill of exceptions discloses the following facts: The railroad at the crossing known as Braley Road Crossing, in the town of Freetown, consists of two sets of tracks which run substantially north and south. Trains on the easterly track proceed northerly toward Boston, and on the westerly track southerly toward New Bedford. The weather was fair and clear on the day of the accident. The highway runs from the southwest toward the northeast and crosses the railroad at an acute angle. The railroad at this point is a few feet above the surrounding country, and as the highway approaches the crossing it begins an up grade at a point about thirty to fifty feet away which continues until it gets to the level of the railroad tracks. The highway before it makes this up grade is practically level for a long distance. As one approaches the railroad from the southwest there is a clear view southerly along the railroad for a

considerable distance. From the center of the north bound track to a point fifty feet southwesterly on the highway there is a view southerly along the railroad tracks of over a mile and one half. At a point seventy-five feet from the center of the north bound track in the center of the crossing southwesterly on the highway, there is a view southerly along the railroad tracks of one thousand three hundred fifty feet; up to a point ninety feet from the center of the north bound track in the middle of the crossing southwesterly on the highway, there is a view southerly along the railroad tracks of one thousand three hundred feet; the latter point would be fifty-eight feet from the nearer rail of the south bound track. At noon on July 22, 1931, the plaintiff, driving a heavy truck, proceeded from the southwest on Braley Road on to the crossing, and collided with a train proceeding from the south on the easterly set of tracks.

Evidence for the plaintiff warranted a finding that between twelve and one o'clock on July 22, 1931, Gaboriault's truck went by the house of one Charles Pittsley, who lived about half a mile from the Braley Road Crossing. Pittsley testified for the plaintiff that the accident happened about a quarter of a mile from where he stood when he saw the truck pass; that the truck had a good load; that soon after he noticed the truck go by he noticed the train go by and he observed the unusual thing that it did not whistle. Pittsley further testified that he did not hear a bell; that he observed the train was more than one hundred feet from the crossing when the whistle blew; that next after the whistle blew he noticed the crash; that the crash occurred "just at the end of the blowing of the whistle"; that from the beginning to the end of the sound of the whistle was not more than a second; that he took a car and went right down to the crossing after the crash; that a sketch (marked Exhibit 1) appeared to be an accurate sketch of the situation at that time as to the road and the tracks; that the parts of the truck were over on the other side and the rear end of the train was on toward Taunton some one hundred fifty feet or more from the truck and the truck was three hundred fifty

feet from the crossing. On cross-examination this witness stated that he was interviewed by a man representing the railroad corporation, and that he signed a statement (exhibited in evidence) which he did not read. The exhibit in some respects differed in its statement of the facts observed from the testimony of the witness describing these facts.

The plaintiff's testimony was as follows: On the day of the accident he was driving a Federal truck with a steel dump body, loaded with crushed stone weighing six or seven tons, and the truck itself weighed five and one half to six tons. He was alone in the truck and there was no traffic on the road at that location. The seat of the truck was inside a closed cab. There was a left hand drive. The cab had two half doors that came to a level with the cushion; from the top of the cushion to the top of the cab were sliding curtains which were rolled up on the day of the accident. He approached Braley Road Crossing at the rate of eighteen to twenty miles an hour, came to the crossing at a sharp angle with a steep up-climb, and, in order to make the grade with the load, had to slow down and shift the gear to a low range of speed in order to go over with the load. As he approached the crossing he looked to his left and saw his way was clear, stooped over the seat to see if everything was clear on his right side and kept on going at a low rate of speed. After he shifted speed as he approached the crossing, he was going about four or five miles an hour. He travelled fifty to seventy-five feet at that speed before reaching the first track. There was no red light at that time; he did not see anything or hear anything and continued going across, looking to the left and right the whole length of the crossing. He crossed the second track and that was all he remembered.

On cross-examination he testified that when he was seated in the cab his eyes were about seven or eight feet above the ground; that without any load the top edge of the truck was about two feet below the top of the cab; that in the back of the cab right in the center there was a window about eight inches square; that this was his second trip that day and he had never gone over the crossing before that day; that he knew there was a crossing there before

he came to it — some distance south of the crossing there was a disk sign with the letters "R.R." on it; that as he approached the crossing on the highway in the direction he was proceeding the railroad tracks were higher than the highway; that when he looked to the south he did not see the train because it was not there; that he should judge he could see about fifty to one hundred feet to the south as he reached the second track, the north bound track; that his last look was between the two rails (sets of tracks) and he then looked and saw no train; that before he went on the first track he looked to the south; that "the road was lined out for me to go over, and it was right there at the crossing as I approached the first rail I looked left and I looked as far as I could right and when I seen that I didn't hear anything and see anything I kept on approaching"; that from any point from thirty feet away from the track up to the first rail, if he were on foot, he could see at least a quarter of a mile south of the crossing; that the reason he did not see farther than he did was because he was partially going in the direction in which the train was going and because of the construction of the cab in which he was riding; that at no time did he stop his truck; that at the foot of the grade he came "almost to a dead stop"; that he knew that by looking out to the right his view was obstructed by the character of the cab in which he was sitting; that he drove on to the crossing without hearing a train or seeing a train, and knowing that he could not see way down the track, because of the way he was sitting when he was struck.

There was evidence for the plaintiff, contradicted by evidence for the defendant, that the whistle was not sounded and the bell was not rung in the manner required by G. L. (Ter. Ed.) c. 160, § 138. On the evidence this was an issue of fact for the jury. *Slattery* v. *New York, New Haven & Hartford Railroad,* 203 Mass. 453. *Brusseau* v. *New York, New Haven & Hartford Railroad,* 187 Mass. 84. Assuming the jury should find for the plaintiff on this issue, the burden of proving gross negligence of the plaintiff was upon the defendant, if it relied on that defence, *McDonald* v. *New York Central & Hudson River Railroad,*

186 Mass. 474, *Eisenhauer* v. *Boston & Maine Railroad*, 285 Mass. 439, G. L. (Ter. Ed.) c. 160; § 232, and on the evidence presented here it could not have been ruled as matter of law that the plaintiff was guilty of gross negligence.

The direction of the verdict for the defendant in the case at bar can stand only on the theory that the plaintiff's conduct, as matter of law, was in violation of G. L. (Ter. Ed.) c. 90, § 15, which reads in part: "Every person operating a motor vehicle, upon approaching a railroad crossing at grade, shall reduce the speed of the vehicle to a reasonable and proper rate . . . ." This rule is one of public policy, designed to promote the general welfare of travellers upon railroads as well as upon the way. It contemplates something more than the absence of due care and provides, in substance, that no person can have the benefit of G. L. (Ter. Ed.) c. 160, § 232, if he is acting at the time of his injury in violation of law and his violation contributes to his injury. *Chase* v. *New York Central & Hudson River Railroad*, 208 Mass. 137. *Fortune* v. *New York, New Haven & Hartford Railroad*, 271 Mass. 101. The burden of proof of compliance with G. L. c. 90, § 15, was upon the plaintiff.* *Fortune* v. *New York, New Haven & Hartford Railroad*, 271 Mass. 101. The plaintiff admits that he had passed over the crossing once before on the day of the accident. He was, therefore, familiar with it and with the grade which approached it. On all the testimony for the plaintiff it is plain, as matter of law, that he violated the statute in driving his truck upon the second set of tracks. The difficulty of seeing and hearing the train due to the angle of approach to the crossing, the obstruction of the cab and the noise of the gears in the third and fourth speed imposed greater caution on the plaintiff and required him to regulate his speed to a reasonable and proper rate and to stop his truck before attempting to make the crossing if he could not see whether the train was approaching without so doing.

---

* See *Klegerman* v. *New York, New Haven & Hartford Railroad*, 290 Mass. — REPORTER.

It follows that the exceptions are overruled and, in accordance with the stipulation, judgment is to be entered for the defendant.

*So ordered.*