EUNICE A. EMERY, administratrix, *vs.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Hampden.   January 6, 1939. — April 11, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & COX, JJ.

*Negligence,* Grade crossing, Violation of law.

An action against a railroad corporation under G. L. (Ter. Ed.) c. 160, §§ 138, 232, for the death of the operator of an automobile struck by a locomotive where a country lane crossed the railroad embankment at grade was barred as matter of law upon agreed facts and uncontroverted evidence requiring a conclusion that, whether or not the operator stopped before he drove up the embankment and onto the crossing, the locomotive must have been in plain view for a considerable distance as he neared the tracks, and that therefore a violation by him of G. L. (Ter. Ed.) c. 90, § 15, contributed to his death.

TORT. Writ in the Superior Court dated May 8, 1935.

At the trial before *O'Connell,* J., a verdict for the plaintiff in the sum of $5,040 was recorded subject to leave reserved, and later a verdict for the defendant was ordered entered. The plaintiff alleged exceptions.

*G. J. Callahan,* for the plaintiff.

*Joseph Wentworth,* (*J. M. Hall* with him,) for the defendant.

Cox, J.   The plaintiff's intestate, George G. Emery, on September 9, 1934, left his house in an automobile "to go down to the meadows beyond the Bark Haul Road railroad crossing for the purpose of getting some wood." This action is to recover for his death, under the provisions of G. L. (Ter. Ed.) c. 160, §§ 138, 232.   At the trial it was agreed that the deceased "while driving across the tracks of the defendant on a road known as Bark Haul Road in the town of Longmeadow, Massachusetts, was struck by a railroad train [belonging to the defendant and operated in its business] on said crossing," and as a result was killed.   The only other evidence in the record that throws any light upon what the deceased was doing on the day he was killed comes from the engineer who was operating the locomotive that struck the automobile.   He testified that as far as he knew he was the only person to see the accident take place; that when he was about two engine lengths away from the crossing "he saw something dive like a flash ahead of him, and saw it was an automobile"; that "when he first saw the automobile it was between twelve and fifteen feet away from the tracks and was moving; that the automobile came from his right and that his train was proceeding in a northerly direction and the automobile was going from east to west . . . that when he saw the automobile it seemed to be coming up a little bit of an incline toward the rail . . . that the automobile was in motion from the time he saw it until he hit it with the engine."

At the close of the evidence the trial judge denied the defendant's motion for a directed verdict and the jury returned a verdict for the plaintiff.   The judge reserved leave to enter a verdict for the defendant under G. L. (Ter. Ed.) c. 231, § 120, and allowed the defendant's motion that a verdict be so entered.   The plaintiff excepted to the allowance of this motion.

The bill of exceptions provides that the exhibits are made a part of it and may be referred to.   Three photo-

graphs were introduced in evidence, all of which were taken on October 23, 1934. One of them is a view to the west showing Bark Haul Road as it approaches and crosses the railroad location. This road appears as two ruts with little, if any, sign of construction or repair work having been done on it. It extends straight into the photograph with just a slight twist in the ruts where it makes its final ascent to the level of the railroad location. The ground on either side of the road appears to be low and swampy (and this is the testimony). No growth appears on the easterly side of the location except grasses and some low shrubs in the foreground, and, upon or close to the location, one tree at the extreme left and some trees and bushes on the right of and north of the crossing. At the right of the road upon a post there is a disk bearing the letters "R. R." In the center of the photograph the railroad location is plainly shown as an embankment; also six wire poles with cross arms appear, three on each side of the location. There is no indication of any habitation or building of any kind. Another photograph, taken one hundred feet south of the crossing and looking north, shows straight double tracks (the main line between Hartford and Springfield), and the Bark Haul Road crossing. The tracks are ballasted with trap rock which extends to the east beyond the ends of the railroad ties. Still farther to the east at the crossing, the dirt approach of the road appears. There are what appear to be planks (and the evidence is to this effect), one inside each rail of the north bound track. Between these planks there is trap rock ballasting (and this is the testimony). On the outside of these rails there is no planking. The other photograph, which was taken at a point fifteen feet from the easterly rail of the north bound track, looking south, does not show the crossing. There was testimony from a civil engineer called by the defendant that from this last point looking south a man on the track could be seen at a distance of four hundred fifteen feet; that the tracks are straight for about two miles in each direction from the crossing; that Bark Haul Road consists of two well worn ruts with a grass

center, about seven feet in width altogether; that from a point forty feet east of the easterly rail to the crossing there is a thirteen per cent increase in grade; and that the crossing is of gravel for about nine feet and then there are three feet of stone to the easterly rail. He further testified that at a distance of nine feet easterly from the easterly rail, looking to the south, a man could be seen on the track from a measured distance of fifty-three hundred feet; that at ten feet from the easterly rail the line of sight was twenty-four hundred feet; at fifteen feet, four hundred fifteen feet; and at twenty feet, two hundred eighty feet.

From the photographs it is apparent that the view to the south and especially to the north along the railroad location is somewhat obscured when a traveller is approaching, as the deceased must have been, and is back from the crossing a considerable distance. But even from such a point the railroad location itself rises before the eyes of the traveller as a definite embankment with poles, bearing wires, standing above the skyline on either side of the crossing.

We think that the deceased failed to "proceed cautiously over the crossing," as required by G. L. (Ter. Ed.) c. 90, § 15, as amended. Although there is no evidence that he had ever been on this road before, nevertheless the presence of the crossing was plainly evident to one approaching it from the east, as did the deceased, and it was apparent that the road crossed the railroad at a right angle. If the collision occurred in the manner that all the evidence tends to indicate, we think it is clear that the deceased had ample opportunity with the exercise of proper caution to observe the approach of the train and that, if he looked at all, he must have looked carelessly or must have continued on in disregard of the danger which was in plain sight. In such cases it has been held as matter of law, in a long series of decisions, both that the operator of the automobile involved has been guilty of contributory negligence and that failure on his part to comply with the statute (c. 90, § 15) has contributed to his in-

jury. *Brown* v. *Boston & Maine Railroad, ante,* 90, 91–92, and cases cited. But before this rule can be applied the court must be satisfied that the case is not one where the evidence fails to disclose the conduct of the deceased, for, if that is the situation, he must be presumed to have been in the exercise of due care. *Gould* v. *Boston & Maine Railroad,* 276 Mass. 114. G. L. (Ter. Ed.) c. 231, § 85. We are of the opinion that this is not such a case. The conduct of the deceased and the decisive circumstances surrounding it are substantially disclosed by agreement and proof · which the plaintiff "cannot successfully controvert so long as her claim remains the one which she has set up and attempted to establish in this action." *Brown* v. *Boston & Maine Railroad, ante,* 90, 92, and cases cited. The agreement made at the trial, by which the plaintiff is bound, establishes that the deceased was driving across the tracks on Bark Haul Road. It is not controverted that he was driving an automobile and was proceeding in a westerly direction to the meadows beyond the crossing. The physical facts established by the photographs are not controverted. It is true that the jury were not required to believe the testimony of the defendant's engineer, or that of the civil engineer, and we take this into account. The plaintiff contends, however, that there is no evidence binding her as to the conduct of the deceased as he approached the track or as he got upon it; that he may have fainted or become ill; and that his automobile may have "caught in the tracks." The plaintiff's declaration alleges that the automobile was struck "while . . . [he] was crossing said Bark Haul Road crossing," and it was agreed that "while [he was] driving across the tracks" on that crossing the automobile was struck. We think it follows from this that it is an established and uncontroverted fact that at the time of the collision the deceased was "driving" across the tracks. A rational view of the established facts must be taken. It would be the merest speculation, and not consistent with practical and ordinary experience, to entertain the theory that the deceased may have fainted or become ill. An examination

of the photographs leads to the reasonable conclusion that an automobile, unaided by guiding hands, could not surmount the roadbed and drive itself upon such a crossing as therein appears. As was said in the case of *Klegerman v. New York, New Haven & Hartford Railroad,* 290 Mass. 268, at page 275, "The driver of a motor vehicle has such complete control of its operation that ordinarily he can stop it before crossing a railroad at grade at a point near enough to afford him a comprehensive view of the tracks." Such an opportunity is disclosed in the case at bar. In the *Klegerman* case there was evidence that the plaintiff stopped from thirty to thirty-five feet back from the center of the crossing, or twelve or fifteen feet from the nearer rail, where it was possible for him to see to his left (from which direction the train came) three hundred seventy-six feet. The court said, at page 276: "It is manifest that by stopping after approaching closer to the tracks he could without danger to himself have had a more extended view and would have had a shorter distance to travel to get on the other side and would have been able to avoid injury. In view of the universally known perils of a railroad crossing, the plaintiff did not proceed cautiously over the crossing"; and it was held that the plaintiff could not recover on his count at common law for negligence or on the count under the special provisions of G. L. (Ter. Ed.) c. 160, §§ 138, 232. It is true that in the case at bar there is no evidence that the deceased did not stop. But we think it is clear that, if he did stop at a point where he could have done so without danger to himself, the physical facts in the case demonstrate that to proceed upon the crossing from that point was not a cautious thing to do. If he did not stop and continued onto the crossing, the physical facts demonstrate that that was not a cautious thing to do. *Anderson v. Boston & Maine Railroad, ante,* 101, and cases cited. There is no evidence in the case and no suggestion that there was anything extraordinary as to the weather or visibility. We think the verdict for the defendant was rightly entered.

In view of this conclusion, it is not necessary for us to

determine whether the crossing was a public or private one; or whether there was any error in the exclusion of evidence bearing upon this question.

*Exceptions overruled.*