ARTHUR S. PIERCE *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Middlesex. April 7, 8, 1952. — July 8, 1952.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Railroad*, Grade crossing. *Motor Vehicle*, Operation. *Negligence*, Violation of law, Grade crossing, Motor vehicle. *Proximate Cause*.

G. L. (Ter. Ed.) c. 90, § 15, as amended, governs the conduct of operators of motor vehicles at a railroad grade crossing on land privately owned. [228]

At the trial of an action for damage to a motor truck resulting from a collision of a railroad car operated by the defendant with the truck at a grade crossing of a spur track on privately owned land, a violation of G. L. (Ter. Ed.) c. 90, § 15, as amended, by the operator of the truck

which was a contributing cause of the collision and precluded recovery was shown as matter of law by evidence that the operator approached the crossing at a speed of four or five miles per hour along a road located six or eight feet from a "solid" board fence twelve feet high to his right, through an opening in which the spur track ran and which obstructed his view to his right until the front of the truck was "half way over the track," that he drove onto the track without stopping, relying on a custom of the railroad trainmen to give a warning, and that he did not see the car until after it had collided with the right rear side of the truck.

TORT. Writ in the Superior Court dated May 24, 1948.

The action was tried before *Beaudreau*, J. Following a verdict for the plaintiff the judge ordered the entry of a verdict for the defendant under leave reserved. The plaintiff alleged exceptions.

*Sumner W. Elton*, for the plaintiff.

*William J. Noonan*, for the defendant.

WILLIAMS, J. This is an action of tort at common law to recover compensation for damage to the plaintiff's motor truck resulting from a collision with a railroad car alleged to have been negligently operated by the defendant. The collision occurred in the afternoon of May 16, 1947, on the premises of the Boston Sand & Gravel Company in the Dorchester district of Boston, at a point where a side or spur track of the defendant entered from the north. The defendant was backing into the premises a "cement" car of the "hopper-bottom" type to deliver a load of cement. An employee of the plaintiff had driven the truck, a ten ton dump truck, loaded with gravel into the sand and gravel company's yard, had deposited the load in a hopper, and was on his way out to the highway when the accident happened. He was proceeding westerly along a rough dirt road or path where his view to his right was obstructed by a "solid" twelve foot board fence which bounded the sand and gravel property on the north. The road ran along six or eight feet from the fence. The defendant's railroad track entered the premises from the north through an opening in the fence about eighteen to twenty feet in width. The operator of the truck testified that, as he approached

the track, "he had to go slow on account of the track where it was sort of down between the rails because you get an awful bump; that as he just went over that, so that he got the front wheels of his truck over the tracks, just about to go a little farther, he got a crash, could go no more, and got out of his truck; that at that time, before he got out of his truck, he was up so that he could see nothing whatever and had to get up off the seat of his truck and look out to see what had happened; that he then saw the end· of the cement car." He had been "crawling" in low speed at four or five miles per hour. "He could not see anything beyond the fence because he was way on the left hand side of the cab, driving." After the accident "he saw the cement car . . . up against the right side of his truck, with the coupling of the car against the chain sprocket just ahead of the rear dual wheel of the truck; . . . at no time as he approached the crossing did he see a cement car on the track on the side of the fence within the Boston Sand & Gravel Company's yard; . . . he could not see whether or not there was one there until it hit him." He testified on cross-examination that the gate at the opening in the fence was open. To a question "You didn't look to see whether or not there was any train coming?" he answered, "I couldn't see the train if it was coming. . . . Because I'd have to be half way over the track with the front of my truck before I could even see through the gate." There was testimony from an employee of the Boston Sand & Gravel Company who saw the collision that it appeared to him that the cement car was standing still, that the front part of the truck cleared it, and that the rear wheels of the truck hit the cement car. There was also evidence that it was the duty and practice of the brakeman to stop the train when it came to the gate, to get off and go through the gate to see if any trucks were coming and to stop them; and that the operator of the truck knew of this practice. The jury returned a verdict for the plaintiff and the judge on leave reserved entered a verdict for the defendant subject to the plaintiff's exception.

There appears here to have been evidence of negligence on the part of the defendant's trainmen and the question to be decided is whether there was evidence for the jury of due care on the part of the operator of the truck. A preliminary matter concerns the applicability to the conduct of the operator of G. L. (Ter. Ed.) c. 90, § 15, as amended, a penal statute which provides that "every person operating a motor vehicle, upon approaching a railroad crossing at grade, shall reduce the speed of the vehicle to a reasonable and proper rate, and shall proceed cautiously over the crossing."

It is contended by the plaintiff that this section is not intended to govern the conduct of motor vehicle operators at a railroad crossing on land privately owned. The section in question first appeared as § 3 of St. 1917, c. 246, combined with sections providing for the maintenance by counties, cities, and towns of warning signs where public ways cross the tracks of railroads at grade. Section 3 referred to "any" railroad crossing and has continued in the present consolidation of the general laws as a separate section of G. L. (Ter. Ed.) c. 90, substantially unchanged in language except for the substitution of the word "a" for "any." We held in *Tazzini* v. *Boston & Maine Railroad*, 277 Mass. 108, that § 15 applied to a private crossing. The section states "a rule of public policy designed to promote the general welfare of travelers upon railroads as well as upon ways." *Fortune* v. *New York, New Haven & Hartford Railroad*, 271 Mass. 101, 105. *Gaboriault* v. *New York, New Haven & Hartford Railroad*, 289 Mass. 36, 42. *Kenney* v. *Boston & Maine Railroad*, 301 Mass. 271, 276. In consideration of this public policy, we conclude that the section was intended to govern the conduct of operators of motor vehicles at any crossing where there is danger of collision with railroad cars or locomotives regardless of whether the crossing is open to the public or is upon privately owned land. It is not without significance that where the Legislature, as in G. L. (Ter. Ed.) c. 160, § 232, intended to restrict the application of the statute to certain described crossings, such restricted ap-

plication of the statute was expressly stated.  In our opinion the statute is applicable here.

The evidence most favorable to the plaintiff showed that the operator of the truck approached the crossing at a speed of four to five miles per hour; that from his position at the left of the cab he could not see whether a train was coming from his right until the front of the truck was "half way over the track"; that he drove over the track without stopping; and that he did not see the cement car until after it had collided with the right side of the truck toward the rear.  Conduct similar to that of the operator of the truck has been held in numerous cases to have been as matter of law a violation of the statute.  See *Creeley* v. *Boston & Maine Railroad,* 263 Mass. 529; *Gaboriault* v. *New York, New Haven & Hartford Railroad,* 289 Mass. 36; *Klegerman* v. *New York, New Haven & Hartford Railroad,* 290 Mass. 268; *Brown* v. *Boston & Maine Railroad,* 302 Mass. 90; *Gove* v. *Boston & Maine Railroad,* 307 Mass. 84; *Dole* v. *Boston & Maine Railroad,* 308 Mass. 46; *Papageorge* v. *Boston & Maine Railroad,* 317 Mass. 235; *Verrocchi* v. *Boston & Maine Railroad,* 322 Mass. 376.  It was said in the case last cited, at page 378, "A reasonable and proper rate of speed means a rate which will enable him [the operator] to stop before he actually reaches the crossing and at a point where he can do so without danger to himself if it reasonably appears that going forward will be fraught with serious danger," and in *Gaboriault* v. *New York, New Haven & Hartford Railroad,* 289 Mass. 36, 42, that the operator was required "to stop his truck before attempting to make the crossing if he could not see whether the train was approaching without so doing."

The exercise of caution on the part of the plaintiff's employee required him to stop his truck and to look before venturing upon the track at this singularly blind and dangerous crossing.  Reliance upon a warning by a trainman did not relieve the operator from exercising active diligence on his own behalf.  *Creeley* v. *Boston & Maine Railroad,* 263 Mass. 529.  *Carcione* v. *Boston, Revere Beach & Lynn Railroad,*

278 Mass. 357, 360. *Papageorge* v. *Boston & Maine Railroad*, 317 Mass. 235, 238.

In our opinion the operator did not comply with the cautionary provisions of § 15, and such failure of compliance is evidence of his negligence. In many instances where penal statutes are violated it is a question of fact whether the violation was a direct contributing cause of the accident or merely an attendant condition (see discussion in *Dean* v. *Leonard*, 323 Mass. 606). In reference to § 15, however, it is held as matter of law that failure to comply with the statute is a contributing cause of the injury for which recovery is sought. *Brown* v. *Boston & Maine Railroad*, 302 Mass. 90, 91–92, and cases cited. The principle is similar to that governing cases where one coasting on a street in violation of a city ordinance is barred from recovery on the ground that his conduct as matter of law is a proximate, contributing cause of the resulting collision. *Query* v. *Howe*, 273 Mass. 92.

Since in our opinion the evidence shows as matter of law that the operator of the truck violated § 15 and that such violation was a contributing cause of the collision, his employer, the owner of the truck, was not entitled to have the case submitted to the jury.

*Exceptions overruled.*