WILLIAM B. HOLMES *vs.* NEW YORK CENTRAL RAILROAD
COMPANY.

Suffolk.    March 3, 1953. — April 14, 1953.

Present: QUA, C.J., WILKINS, SPALDING, & COUNIHAN, JJ.

*Railroad*, Grade crossing.  *Motor Vehicle*, Operation, Grade crossing.

Evidence of the circumstances in which the operator of a large motor
truck, approaching a railroad grade crossing where there were several
tracks and a fence would obstruct his view to his right until the truck
was very close to the second track, stopped just short of the crossing
and then, with a traffic signal light located at the crossing showing
green, proceeded over the crossing until the truck was struck on the
second track by a locomotive approaching from his right which he was
unable "to get away from" after he had observed it, did not require a
ruling that as matter of law he violated G. L. (Ter. Ed.) c. 90, § 15.

TORT.    Writ in the Superior Court dated September 19,
1949.

The action was tried before *Goldberg, J.*

*Orie D. Ouellette*, for the plaintiff.

*Walter N. Kernan*, for the defendant.

SPALDING, J.    This action of tort arose from a collision
of a truck driven by the plaintiff with the defendant's
engine at a grade crossing in Somerville.    The case was
tried to a jury which returned a verdict for the plaintiff.
The verdict having been recorded under leave reserved,
the judge, on motion, entered a verdict for the defendant.
The plaintiff's exception to this ruling presents the only
question for decision.

Violation of law on the part of the plaintiff was pleaded
by the defendant.    The violation relied on is of G. L. (Ter.
Ed.) c. 90, § 15, as amended, a penal statute, which pro-
vided at the time of the accident that "every person oper-
ating a motor vehicle, upon approaching a railroad crossing
at grade, shall reduce the speed of the vehicle to a reasonable

and proper rate, and shall proceed cautiously over the crossing." See now St. 1951, c. 557. The parties have argued the case on the basis that the only issue involved is whether the plaintiff violated this statute, and we shall deal with the case accordingly.

The evidence, which included a map and photographs, may be summarized as follows: The accident took place where Medford Street, Somerville, running roughly north and south, and the defendant's east-west tracks intersect at grade, near the plant of the John P. Squire Company. The plaintiff, heading north on Medford Street, was driving a truck of the tractor-trailer type and had stopped at the plant gate with the front of the truck about twelve feet south of the first of six sets of rails which make up the crossing. The collision took place on the second set of rails, referred to as "track 9," about 3:50 P.M. on August 31, 1948. From the point at which the plaintiff had stopped his truck he could see fifty or sixty feet down the track to the west. To the east (his right) his view of the track was completely obscured by a tight board fence twelve to fifteen feet high. An ordinary electric traffic signal stood on the sidewalk some "eight . . . [or] maybe ten feet" north of the plaintiff's stopping place and about four feet from the first rail. That signal and three others placed at the corners of the crossing area were maintained by the defendant. The traffic signals were so placed as to be visible to travellers going in either direction on Medford Street. Three railroad signal lights were maintained by the defendant along its right of way. They were so placed as to be visible to the engineer of any train approaching the crossing. The traffic signals at the crossing had three lights, red, yellow, and green, while the railroad signals had two, red and yellow. All of the signal lights were controlled from a switch box at a crossing on Cambridge Street, which was five hundred fifty feet west of the Medford Street crossing. An employee of the defendant, whose duty was to operate these signals by means of a switch on the control box on the approach of a train at either crossing, was stationed at

the Cambridge Street crossing. This employee had a clear view of the track in both directions for a considerable distance. The traffic and railroad signals were synchronized so that the railroad signals were red when the traffic signals were green or red and yellow. The railroad signals were yellow only when the traffic signals were red. On yellow signals trains could proceed, and on red signals they were required to stop.

The plaintiff, who, as above stated, had stopped his truck twelve feet south of the first set of rails, then proceeded over the crossing. The signal lights at that time were green and remained so until just after the collision. In proceeding over the crossing the plaintiff relied on the green signal light and regarded it as "an invitation . . . to go across." After "he started . . . he heard no sound at all." Because of the fence he could not see anything on his right, but "as he was going over the [first] rail" of track 9 (actually the second set of tracks) he was looking to the right. When "the front end of the tractor was on . . . [track 9] he looked up and saw this big engine coming from behind the fence." He "tried to get away from it but there was . . . [an automobile] coming in the opposite direction over the crossing." From the "moment he first saw the engine until the crash he cramped the [steering] wheel hard to the left and tried to run by the track" so that if there was a collision it would involve the trailer rather than the cab of the truck. There "was just a big crash and that was all he knew." When hit, the plaintiff "was going possibly eight miles an hour or so . . . [and] at no time between the time he started . . . until the impact did he reduce his speed; but instead gained momentum." The engineer testified that the speed of the train was four to five miles an hour, and there was evidence that the engine "travelled 25 or 30 feet" between the time when the plaintiff was first seen by the fireman and the time of impact; the plaintiff testified that it came upon him suddenly. The plaintiff was familiar with the crossing and sometimes had occasion to cross it four or five times a day.

We are of opinion that the verdict returned by the jury ought not to have been disturbed. It is true that in a long line of cases, many of which are collected in the margin,[1] we have interpreted G. L. (Ter. Ed.) c. 90, § 15, as placing a heavy responsibility on one who drives a motor vehicle over a railroad crossing at grade. And there is good reason for so holding. Since railroad crossings are places of danger, those passing over them are properly held to a degree of caution commensurate with such danger. In the cases under §. 15 to which we have referred, the conduct of the plaintiff was such as to show lack of caution as matter of law. The most recent of these cases is *Pierce* v. *New York, New Haven & Hartford Railroad,* 329 Mass. 225, on which the defendant strongly relies. For reasons that will be discussed later we are of opinion that that case is not controlling here.

The plaintiff testified that he relied upon the green light in proceeding into the crossing area. He had heard no warning signals and, because of the fence, could not have seen the engine approaching from his right on track 9 until after he had crossed the first set of rails. It appears from the map and pictures, the accuracy of which seems not to be disputed, that after one passes over the first set of rails, and before reaching track 9, there is a space of only a few feet in which the view of one looking to his right is not obstructed by the fence. According to the defendant's civil engineer a person five feet from the nearer or southerly rail of track 9 would have a view up the track to his right for a distance of one hundred sixty-one feet, and at ten feet from that rail he could see for a distance of sixty-three feet. The pictures and map lend support to this evi-

[1] *Fortune* v. *New York, New Haven & Hartford Railroad,* 271 Mass. 101. *O'Meara* v. *Boston & Maine Railroad,* 277 Mass. 315. *Carcione* v. *Boston, Revere Beach & Lynn Railroad,* 278 Mass. 357. *Gaboriault* v. *New York, New Haven & Hartford Railroad,* 289 Mass. 36. *Klegerman* v. *New York, New Haven & Hartford Railroad,* 290 Mass. 268. *Germaine* v. *Boston & Albany Railroad,* 298 Mass. 501. *Brown* v. *Boston & Maine Railroad,* 302 Mass. 90. *Emery* v. *New York, New Haven & Hartford Railroad,* 302 Mass. 578. *Dole* v. *Boston & Maine Railroad,* 308 Mass. 46. *Rice* v. *Boston & Maine Railroad,* 316 Mass. 603. *Papageorge* v. *Boston & Maine Railroad,* 317 Mass. 235. *Verrocchi* v. *Boston & Maine Railroad,* 322 Mass. 376. *Pierce* v. *New York, New Haven & Hartford Railroad,* 329 Mass. 225.

dence.  But even giving the defendant the benefit of the most favorable view of this evidence we are of opinion that the plaintiff cannot be said to have violated § 15 as matter of law.  The space in any event between the point where one could have any appreciable view to his right and track 9 was very narrow.  The dimensions of the plaintiff's truck do not appear.  But obviously the cab in which the plaintiff sat was some distance from the front end of the truck.  Hence the front of the truck would be very close to track 9 before the plaintiff would have a view to his right for any considerable distance.  Moreover, some allowance must be made for the overhang of the engine.  And it is reasonable to infer that even if the plaintiff had attempted to stop the truck before crossing track 9 it would travel some distance, however short, after the brakes were applied.  Furthermore, the rear portion of the truck, if stopped, would not be in a place of complete safety, for it would rest on the first set of rails.  Hence, had the plaintiff attempted to stop short of track 9, the front of his truck might have been in the path of an engine approaching on that track while the trailer would have been exposed to collision of a train coming on the first set of rails.

The plaintiff, of course, was not justified in relying entirely on the green light.  He still had the duty of exercising active diligence on his own behalf.  *Papageorge* v. *Boston & Maine Railroad,* 317 Mass. 235, 238.  *Verrocchi* v. *Boston & Maine Railroad,* 322 Mass. 376, 378.  But caution is a relative concept.  Conduct that may be cautious under one set of circumstances may be foolhardy or careless under another.  Taking into consideration the physical peculiarities of this crossing coupled with the facts that the plaintiff heard no warning signals and that the traffic lights were green, we are of opinion that whether the plaintiff violated § 15 was a question of fact for the jury.  See *Eisenhauer* v. *Boston & Maine Railroad,* 285 Mass. 439, 444–445; *Lincoln* v. *New York, New Haven & Hartford Railroad,* 291 Mass. 116, 118–119; *Rivet* v. *Boston & Maine Railroad,* 320 Mass. 41.

It must be conceded that the case at bar resembles in many respects the case of *Pierce* v. *New York, New Haven & Hartford Railroad,* 329 Mass. 225, mentioned above, where it was held that the plaintiff had violated § 15 as matter of law and could not recover. That case goes to the verge and we are not disposed to extend it. The present case, we think, is distinguishable. In the *Pierce* case there was evidence that it was the duty and practice (known to the plaintiff) of a brakeman to stop the train when it came to the gate, to get off and go through the gate to see if any trucks were coming, and to stop them. Yet it was held that despite the failure to warn in this manner the plaintiff violated § 15 as matter of law. In the case at bar, however, there was more than an absence of a customary warning; there was an affirmative signal (the green light) from which the plaintiff could reasonably conclude that trains were not at that time approaching the crossing. And there is the added circumstance, mentioned above, that if he had lingered on the first set of tracks he would not have been in a place of safety. These facts are sufficient, we think, to place the present case on the other side of the line. Similarly, in these respects, if not in others, the case at bar differs from *Papageorge* v. *Boston & Maine Railroad,* 317 Mass. 235; and *Verrocchi* v. *Boston & Maine Railroad,* 322 Mass. 376, on which the defendant also relies.

The fact, stressed by the defendant, that the plaintiff's truck "gained momentum" as it went over the tracks does not, in the circumstances, bar the plaintiff. It could be inferred that the plaintiff did this to extricate himself from the imminent peril in which he found himself. Conduct on his part which, after the event, may appear to have been unwise may have seemed at the time to be the proper course. "A choice may be mistaken and yet prudent." *Kane* v. *Worcester Consolidated Street Railway,* 182 Mass. 201, 202. See *Rollins* v. *Boston & Maine Railroad,* 321 Mass. 586, 589.

The exceptions are sustained and judgment is to be entered on the verdict returned by the jury.

*So ordered.*