LOT E. BATES, JUNIOR, administrator, *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Norfolk.    November 9, 1955. — December 15, 1955.

Present: QUA, C.J., RONAN, WILKINS, WILLIAMS, & WHITTEMORE, JJ.

*Negligence,* Violation of law; Grade crossing; Railroad: grade crossing; Contributory. *Railroad,* Grade crossing. *Motor Vehicle,* Operation, Grade crossing.

Violation by a railroad of an order of the railroad commission under St. 1906, c. 463, Part II, § 151, now G. L. (Ter. Ed.) c. 160, § 147, requiring the presence of a crossing tender at a certain grade crossing was evidence of negligence on the part of the railroad toward the owner and operator of an automobile struck by a train on that crossing at a time when the crossing tender was absent, whether or not the railroad incurred a penalty for the violation under c. 160, § 148.  [371]
A finding of negligence of a railroad toward the owner and operator of an automobile struck by a train on a grade crossing at a time when the crossing tender assigned to that crossing was absent was warranted by evidence that the crossing tender's home was some eight miles from the crossing, that on the morning of the accident he allowed only about the usual time to get to the crossing by automobile notwithstanding a severe snow storm then in progress, and that he was delayed by the storm and did not reach the crossing until after the accident. [371–372]
Evidence of the circumstances in which, it might have been found, one operating an automobile during a severe snow storm stopped short of a railroad grade crossing, looked and listened, observed the absence of the crossing tender and heard a "very distant and very muffled" whistle, and then proceeded slowly onto the crossing, where the automobile was struck by a rapidly approaching train obscured by a screen of snow thrown up by the engine, did not require a ruling as matter of law that the operator was guilty of contributory negligence or that he did not comply with G. L. (Ter. Ed.) c. 90, § 15, as amended by St. 1933, c. 26, § 1.  [372]

TORT.    Writ in the Superior Court dated October 6, 1949. The action was tried before *Murray,* J.

*Noel W. Deering,* (*John A. Briggs* with him,) for the defendant.

*Roger B. Coulter,* (*Philander S. Ratzkoff* with him,) for the plaintiff.

WHITTEMORE, J.  In this action of tort the jury found for the plaintiff on two common law counts for personal injury and property damage.  The defendant's exceptions are to the denial of its motion for a directed verdict and its motion to enter a verdict under leave reserved.

There was no error in denying these motions.  There was evidence of the defendant's negligence and the plaintiff's intestate could have been found not to have been contributorily negligent and to have complied with G. L. (Ter. Ed.) c. 90, § 15, as amended.

The plaintiff's intestate was driving his automobile from west to east over the defendant's Beechwood crossing in Cohasset about 8 A.M., Sunday, January 18, 1948, during a severe snow storm which had aspects of a blizzard.  His automobile was hit on the crossing by the left front of the engine of a regularly scheduled northbound train that was running only slightly late.  The automobile was carried to the Cohasset station four thousand nine hundred seventy feet north of the crossing before anyone knew there had been an accident.  The plaintiff's intestate had no memory of the collision itself.  He died fourteen months after the accident.  The jury found for the defendant under a count for causing his death.

The following stated facts were undisputed on the evidence: A crossing tender, usually on duty at such a time, was absent.  His presence was required under an outstanding order of the railroad commission.[1]  He had been delayed by the storm in reaching the crossing from his home in East Weymouth which was approximately eight miles away from the crossing by timetable mileage.  He was coming over the road in his own automobile and had left home at about 6:40 A.M. to arrive at 7:30 A.M., the assigned hour.  He

---

[1] Statutory predecessor of the department of public utilities.  St. 1913, c. 784.  St. 1919, c. 350, Part III, § 117.

usually allowed himself forty-five minutes to get to the crossing. He was delayed at the Hingham overpass adjacent to the Hingham traffic circle. Finally it became necessary to put on chains. He arrived at his position sometime from 8:10 to 8:25 A.M.

Violation of the order of the railroad commission of January 12, 1911, made pursuant to St. 1906, c. 463, Part II, § 151, was evidence of negligence of the defendant as to all consequences which that order was intended to prevent. *Giacomo* v. *New York, New Haven & Hartford Railroad,* 196 Mass. 192, 195. *Mannino* v. *Boston & Maine Railroad,* 300 Mass. 71, 75. *Carbone* v. *Trustees of New York, New Haven & Hartford Railroad,* 320 Mass. 710, 712. *Friese* v. *Boston Consolidated Gas Co.* 324 Mass. 623, 630. Obviously, the injury to the plaintiff's intestate was such a consequence. There was here a causal connection between the injury and the condition to which the order applies. Compare *McGlauflin* v. *Boston & Maine Railroad,* 230 Mass. 431, 434.

The statutory penalty for violation of the subject order is, by G. L. (Ter. Ed.) c. 160, § 148, imposed only if the railroad corporation "unreasonably neglects to comply." It follows from our decision in *Carbone* v. *Trustees of New York, New Haven & Hartford Railroad,* 320 Mass. 710, that a violation of an unqualified order may be evidence of negligence whether or not a separately prescribed penalty is incurred. In that case we held that the violation of a statute was evidence of neglect as to all consequences that were intended to be prevented even though the statute imposed no penalty. Here the separately prescribed penalty did not have the effect of lessening the mandate of the order of the railroad commission. The penalty was prescribed only for certain, but not all, violations of the order.

We think that in any event there was here sufficient evidence of unreasonable neglect to have taken the case to the jury. The crossing tender during a severe snow storm allowed only about the usual time to get to his post several miles away. The defendant had chosen to assign to the post a man who lived at a distance and whose prompt

arrival, it could have foreseen, might be delayed by antici-
patable bad weather or other unusual events.

It is unnecessary to decide whether there was any evi-
dence of negligence in the operation of the train because of
obscured vision, a screen of snow thrown by the engine,
and the speed of the train.

The remaining issues are whether the judge should have
ruled as a matter of law that the plaintiff's intestate was
contributorily negligent or did not comply with the mandate
of G. L. (Ter. Ed.) c. 90, § 15, as amended by St. 1933,
c. 26, § 1, a penal statute, which, as it read before a 1951
amendment, required that every person operating such a
motor vehicle as was here involved "upon approaching a
railroad crossing at grade, shall reduce the speed of the
vehicle to a reasonable and proper rate, and shall proceed
cautiously over the crossing."

We think such rulings could not properly have been
made and that the questions of contributory negligence and
compliance with the statute were for the jury.

There was evidence from which it could have been found
that the plaintiff's intestate was very familiar with the
crossing, that he stopped, looked and listened at a point
about twenty-seven feet westerly of the tracks, having
turned down his right front window as he came to a stop,
that he observed the absence of a crossing tender and saw
that the door of the crossing tender's shanty was closed,
and that he then proceeded slowly to the crossing while
continuing to be alert for the appearance of the crossing
tender and the sight or sound of an oncoming train. The
jury could have believed that the accident occurred, not-
withstanding these precautions of the plaintiff's intestate,
because the engine, travelling rapidly and ploughing one to
two feet of snow, was throwing a screen of snow which
obscured the engine from an observer in front even at a
very short distance and which itself was undifferentiated
in appearance from the whiteness of the gusty and squally
storm. It was open to the jury to find also that the distance
at which other objects could be seen, notwithstanding the

storm, was substantial, and that neither permanent physical structures nor features of the landscape obscured vision for some distance down the track. On these facts the case is distinguishable from *Papageorge* v. *Boston & Maine Railroad*, 317 Mass. 235.

We cannot say that the conclusion was required that the plaintiff's intestate should have anticipated an obscuring snow screen. On the evidence therefore the jury could have concluded that the plaintiff's intestate adopted "such other reasonable measures as common prudence dictated" in view of the restriction of his vision by the storm (*Papageorge* v. *Boston & Maine Railroad*, 317 Mass. 235, 238) and that he exercised active diligence on his own behalf. *Holmes* v. *New York Central Railroad*, 330 Mass. 155, 159. *O'Brien* v. *Boston & Maine Railroad*, 330 Mass. 347, 350–351. The plaintiff's intestate could rely to some extent on the absence of the crossing tender, and the evidence does not require the finding that he relied entirely on this circumstance. *Holmes* v. *New York Central Railroad*, 330 Mass. 155, 159. See *Papageorge* v. *Boston & Maine Railroad*, 317 Mass. 235, 238; *Morrissey* v. *Boston & Maine Railroad*, 216 Mass. 5; *Eisenhauer* v. *Boston & Maine Railroad*, 285 Mass. 439; *Verrocchi* v. *Boston & Maine Railroad*, 322 Mass. 376, 378.

When the plaintiff's intestate stopped he heard a whistle "very distant and very muffled." The muffling effect of a snow storm on train and highway noises being well known, it would have been incautious not to have allowed for it in evaluating the significance of the whistle, but we cannot say that the evidence of what the plaintiff's intestate did shows conclusively that he did not make such allowance, or that he acted with lack of the required care because he heard the whistle. There was evidence of a number of crossings in the neighborhood for which the train was required to whistle.

We have carefully considered the evidence on which the defendant relies including that which tends to show that the plaintiff's intestate stopped at a point where his vision was obscured by the crossing tender's shanty, that he did

not continue to look southerly while he approached the tracks after stopping, and that if he was looking down the track at the critical moments just before the automobile arrived at the tracks, he was doing so through window glass which obscured his vision. The evidence, though it permitted these findings, did not require that they be made. It is undisputed that the plaintiff's intestate was turning up the glass as he started forward after having stopped. The photographs in evidence, of the automobile shortly after it was disengaged from the train, show the window closed, but it could have been closed just before the automobile was hit, and the jury were not required to find that such snow as may have accumulated on the window glass before it was lowered was not removed by the act of lowering it.

*Exceptions overruled.*